MARGARET TAYLOR *et al.*

*v.*

HELEN J. LAWRENCE.

*Filed at Ottawa January 16, 1894.*

1. LIMITATIONS—*title under section 1 of the act of 1839.* In order to establish a bar under section 1 of the act of 1839, the party must prove in himself, first, color of title; second, seven successive years' possession by himself or grantors under such color of title; and third, payment of taxes during the said seven years' possession.

2. SAME—*evidence to show who paid taxes.* To prove the payment of taxes on a tract of land for the year 1873, a book in the custody of the county clerk, entitled "Collector's book for the town * * * for the year 1873," was offered in evidence. This book showed that the east eighty acres of the quarter section was assessed to A. J. Merrin. Under the head "when and by whom paid," were the words, "Dec. 6, A. J. Merrin." As to the other eighty acres the book showed that the same was assessed to Richard Merrin, and paid by him December 13. The collector failed to make a return in the book: *Held,* that the entries in the collector's book were competent evidence to prove the payment of the taxes for the year 1873, and that the misspelling of the tax-payer's name did not affect their admissibility.

3. SAME—*payment of taxes with borrowed money.* If a party in the possession of land under color and claim of title borrows the money to pay the taxes of a year from the wife of the owner of the patent title, that fact will not militate against the tax payment made by him in his own name under such color of title.

4. DOWER—*of wife in husband's land.* The statute provides that a wife shall be endowed of the third part of all the lands whereof her deceased husband was seized of an estate of inheritance, at any time during the marriage, unless the same shall have been relinquished in legal form.

5. SAME—*evidence to show relinquishment.* A certificate of evidence in a suit in chancery prior to the pending proceeding, showed that the defendant read in evidence the record of a warranty deed from a husband and wife made before the death of the former, but neither the deed nor its terms were set out in the certificate: *Held,* that such certificate was not sufficient to show the release of the wife's dower, and that this court could not look beyond the certificate to ascertain the terms of the deed or its acknowledgment.

6. SAME—*not barred by limitation against husband's estate.* A transfer of a husband's estate, or that of his grantee, by operation of the Statute

of Limitations, will have no greater effect upon his wife's right of dower than a conveyance by her husband in which she has not joined.

7. POWER OF SALE—*in a mortgage*—*proof of execution of the power by one acting as administrator of mortgagee.* To show the right of one to execute the power of sale in a mortgage, as, the administrator of the mortgagee, some evidence of the death of the latter and of the appointment of the person making the sale as administrator is necessary, beyond the mere recital of those facts in the administrator's deed.

8. To show the transfer of the title to a tract of land under two sale mortgages, by the exercise of the powers of sale, the defendant in ejectment read in evidence the record of two deeds purporting to have been executed by the administrator of the mortgagee under the powers of sale, and the accompanying notices of sale, which were referred to in and formed a part of the deeds. These records were objected to, on the ground that it was not shown that the mortgagee was dead, or that the person making the deeds was his administrator or authorized to execute the powers of sale : *Held,* that to make these deeds competent, *prima facie* proof of these facts was required.

WRIT OF ERROR to the Circuit Court of Grundy county ; the Hon. GEORGE W. STIPP, Judge, presiding.

Messrs. BREWER & STRAWN, for the plaintiffs in error :

In a case like this the paramount title is not overcome by loose and uncertain testimony, or by conjecture and presumptions. *Hurlbut* v. *Bradford,* 109 Ill. 397 ; *Perry* v. *Burton,* 111 id. 138, and 126 id. 599 ; *Jayne* v. *Gregg,* 42 id. 413 ; *Bolden* v. *Sherman,* 101 id. 483 ; *Irwin* v. *Miller,* 23 id. 401 ; *Whitney* v. *Stevens,* 89 id. 53.

In *Irwin* v. *Miller, supra,* the court say "that the production of the collector's book, with the word 'paid' written opposite the tract, did not prove payment by the defendant, or those under whom he claimed."

There was no return or affidavit or other evidence that the town collector ever received or collected taxes. Under the column "by whom paid" are the words, "A. J. Merrian," and "Richard Merrian." "Merrin" and "Merrian" are not *idem sonans. Amann* v. *People,* 76 Ill. 188 ; *Garrison* v. *People,* 21 id. 535 ; *Kennedy* v. *Merriam,* 70 id. 228 ; *Brown* v. *People,*

66 id. 344; *Schoonhoven* v. *Gott,* 20 id. 46; *Vance* v. *State,* 65 Ind. 460.

Neither will the court presume that A. J. Merrian is Andrew J. Merrin, on account of the variance between "A." and "Andrew." *Shinn* v. *State,* 57 Ind. 144·; *Yount* v. *State,* 64 id. 443; *Gage* v. *Mayer,* 117 Ill. 632.

In *McConnel* v. *Konepel,* 46 Ill. 519, it is held that the party furnishing the money, and not the party to whom the tax receipt runs, is entitled to the benefit of the payment.

Recitals in the trust deed were not evidence against a stranger to the conveyance. *Stumpf* v. *Osterhage,* 94 Ill. 115; 2 Herman on Estoppel, 741; Blackwell on Tax Titles, *378.

A power of sale in a mortgage must be strictly pursued. It can not be delegated or performed by an agent. *Flower* v. *Elwood,* 66 Ill. 438; *Warnecke* v. *Lembca,* 71 id. 91.

The Statute of Limitations does not begin to run against dower until the death of the husband. *Moore* v. *Frost,* 3 N. H. 126; *Durham* v. *Angier,* 20 Me. 242; *Hart* v. *McCullum,* 28 Ga. 478; *Blevins* v. *Smith,* 104 Mo. 583; Wood on Limitations, 584; 2 Scribner on Dower, 559.

Mr. S. C. STOUGH, for the defendant in error.

Per CURIAM: November 9, 1881, Edmund D. Taylor filed a bill for partition, claiming title to an undivided one-half of the south-west quarter of section 19, township 33, north, range 8, east of the third principal meridian, in Grundy county, Illinois. The defendant Orpheus A. Root was in possession under a tax title. Pending the litigation, in November, 1885, Helen J. Lawrence purchased Root's title and was made a defendant to the bill. The defendant Helen J. Lawrence, in her answer to the bill, set up two tax deeds, the first dated November 22, 1860, for the east nine acres of the quarter section, and the second dated July 26, 1861, for the west 149.88 acres, and also seven years' possession and payment of taxes under color of title. In an amended answer she also set up seven years'

actual residence under the tax titles, and also payment of taxes for seven years under color of title while the land was vacant and unoccupied. After a hearing of the cause, but before a decision was reached, the complainant died, and his heirs were made complainants to the bill, and upon a final hearing on the pleadings and evidence the court rendered a decree dismissing the bill, to reverse which the complainants sued out this writ of error.

It appeared on the hearing that the quarter section of land was patented to James Whitlock, and it may be conceded that a regular chain of title was established from Whitlock to Edmund D. Taylor for the undivided one-half of the quarter, and under this title the complainants would be entitled to recover, unless barred by the Statute of Limitations set up by the defendant in the answer. We shall not stop to consider whether the title passed under the judgment for taxes, sale and deeds. Nor will it be necessary to determine whether the defendant established, by the evidence, actual residence for seven years under a connected title deducible of record, as required by the act of 1835 or under the second section of the act of 1839. But we think the decision of the case may be properly predicated on section 1 of the act of 1839, which, in substance, declares that every person in the actual possession of lands under claim and color of title made in good faith, and who shall for seven successive years continue in such possession, and shall during said time pay all taxes legally assessed on such land, shall be adjudged to be the legal owner to the extent and according to the purport of his or her paper title.

In order to defeat the complainants' title and establish a bar under this section of the statute, it became necessary for the defendant to prove in herself, first, color of title; second, seven successive years' possession, by herself or grantors, under such color of title; third, payment of taxes during the said seven years' possession.

The defendant, Helen J. Lawrence, for the purpose of prov-
ing color of title, read in evidence the following conveyances:
November 22, 1860, tax deed to J. D. Matthews, nine acres;
July 27, 1861, tax deed to J. D. Matthews, 149.88 acres;
August 29, 1862, John D. Matthews to David Matthews, deed,
south-west quarter; March 25, 1869, David Matthews to An-
drew J. Merrin, east 80 acres; March 25, 1869, David Mat-
thews to Richard Merrin, west 78.88 acres; March 25, 1869,
Andrew J. Merrin to David Matthews, sale mortgage, east
80 acres; March 25, 1869, Richard Merrin to David Mat-
thews, sale mortgage, west 78.88 acres; May 3, 1876, Edward
D. Matthews to William E. Lewis, deed, east 80 acres; May
3, 1876, Edward D. Matthews to William E. Lewis, deed, west
78.88 acres; May 19, 1876, William E. Lewis to Edward
D. Matthews, deed, south-west quarter; November 29, 1880,
Edward D. Matthews to Orpheus A. Root, deed, south-west
quarter; November 16, 1885, Orpheus A. Root to Helen J.
Lawrence, deed, south-west quarter.

It is plain that J. D. Matthews acquired color of title by
the tax deeds of 1860 and 1861, and it is clear that the color
of title passed, by regular chain of conveyances, to the de-
fendant, Lawrence, unless the foreclosure of the sale mort-
gages by Edward D. Matthews, and the conveyance by him
to William E. Lewis, was unauthorized. The mortgages given
by the Merrins to David Matthews, upon default of payment,
authorized the mortgagee or his legal representatives to ad-
vertise and sell the land in payment of the indebtedness.
Under this power, Edward D. Matthews, as administrator of
the estate of Edward Matthews, advertised, sold and conveyed
the land to Lewis.

Waiving for the present the determination of the question
of the authority of Matthews to execute the powers of sale,
and assuming that the record shows a regular chain of valid
conveyances from Matthews to the defendant, the first question
to be considered is, whether the evidence shows seven years'

possession of the premises under color of title. The land was vacant and unoccupied until the spring of 1869. On the 25th day of March, 1869, the Merrins obtained deeds from David Matthews, and at once went into possession of the land under that title and commenced improving it. In 1870 they leased it to J. N. Patterson, who farmed the land under the lease that year. The next season the Merrins moved on the land, and remained there cultivating it until they were dispossessed by an action of forcible detainer, in 1878 or 1879, brought by Lewis, who acquired their title under the foreclosure sale made by E. D. Matthews, May 3, 1876, wherein the land was sold in satisfaction of a mortgage they had given David Matthews for the purchase money for the premises. Here was a period of over seven years that the land was occupied and cultivated by the Merrins under the title they acquired of Matthews, which passes by *mesne* conveyances to the defendant.

It is claimed, however, that in the spring of 1871 Taylor instituted suit in the District Court of the United States at Chicago, and recovered possession of the land, and he subsequently sold it, by verbal contract, to one of the Merrins. We find no satisfactory evidence in the record to sustain this position. The evidence is clear that the Merrins entered under the Matthews title and occupied under it so long as they were on the land. It is perhaps true that when the Merrins discovered that the mortgage they had given Matthews was being foreclosed, they attempted to set up that they were holding possession under Gay of St. Louis, but they could not dispute the title under which they entered, and attorn to him, as was settled by *Merrin* v. *Lewis,* 90 Ill. 507.

We think it apparent, from the testimony, that possession of the land was held under the Matthews title, and that alone, from 1869 down to the date the cause was heard.

The remaining question to be considered in this connection is, whether the seven successive years' payment of taxes was established from and after possession taken in March, 1869.

Beginning with 1872, Bartlett testified that he was town collector for that year, and that A. J. Merrin paid on the east 80 and Richard Merrin paid on the west 80. In order to prove payment for 1873, defendant offered in evidence a book in the custody of the county clerk at his office in Grundy county. The book was entitled, "Collector's book for the town of Wauponsee, Grundy county, Illinois, for the year 1873." This book showed that the E. 80 acres, S. W. 19, S. 33, R. 8, were assessed to A. J. Merrin. Under the head when and by whom paid, is the following: "Dec. 6, A. J. Merrin." As to the other 80, the book shows assessed to Richard Merrin and paid by him December 13. The collector failed to make a return in the book, but it is so clear that the book was the collector's book for 1873, for the town in which the land is located, that the omission did not vitiate it. It was found in the custody of the proper officer, and showed that the taxes had been duly collected by the town collector for that year. The name of Merrin was not correctly spelled, but we do not regard this omission of any importance.

We think it plain from the book that A. J. Merrin paid the taxes for that year on the east 80, the one he owned, and Richard Merrin paid on the other. As to 1874, Button testified that he was the collector. Andrew J. Merrin paid on the east 80, and his father, Richard, on the other. As to 1875, Miller, the collector, testified that A. J. Merrin paid taxes on the east 80 and Richard Merrin on the west. As respects 1876, Patterson testified, for the year 1876 Reading paid for E. D. Matthews. The witness also testified that he was also elected county treasurer in the fall of 1877, and held the office until in the fall of 1886; that for 1877 Matthews paid the taxes on the quarter section, and each year thereafter until he conveyed to Root, when the taxes were paid by Mrs. Lawrence. The land was conveyed from Matthews to Root on November 29, 1880, so that, under the evidence of Patterson, the taxes to and including 1879 were paid by Matthews,

and for the year 1880 the proof shows that they were paid by Mrs. Lawrence for Root, making a tax payment of eight successive years. There was an attempt made on the trial to prove that Taylor paid the taxes for 1875, but the evidence was not sufficient to establish that fact. A man representing himself as Richard Merrin called on Mrs. Taylor and procured some $36 to be used, as he claimed, to pay those taxes on this land. Who the man really was, or what use he made of the money, does not appear. In 1875 the two Merrins were on the land, claiming as owners under the Matthews title, and they paid the tax that year as they did in former years, and if one of them did procure money from Mrs. Taylor under the pretense that it would be used for the payment of taxes, that fact does not militate against the tax payment made by him in his own name under the title he held.

It is claimed, in the next place, that the court erred in denying Margaret Taylor, the widow of Edmund D. Taylor, dower in the premises. The statute provides that a wife shall be endowed of the third part of all the lands whereof the deceased husband was seized of an estate of inheritance, at any time during the marriage, unless the same shall have been relinquished in legal form. R. S. chap. 41, sec. 1. It is not disputed that Edmund D. Taylor was seized of an estate of inheritance in the land on and prior to May 9, 1866, and that was during his marriage with Margaret Taylor. Such being the case, his widow is entitled to dower, unless she has relinquished her right thereto in some legal form. To show such relinquishment, reliance is placed upon a conveyance of the land by Edmund D. Taylor and wife to William S. Gay, dated May 9, 1866. The only evidence of such conveyance and its terms contained in the record before us, is to be found in the following memorandum in the certificate of evidence: "Said defendant then and there offered and read in evidence the record of a warranty deed from Edmund D. Taylor and wife to William S. Gay to the land in controversy, dated May 9,

1866, and filed for record in the office of the said recorder
May 29, 1866, and recorded in book 20, on pages 365 and
366; consideration $1300." The deed itself is not set out in
the certificate of evidence, nor is anything shown from which
it can be seen whether it was sufficient in law to operate as
a relinquishment of dower. We are not called upon nor are
we at liberty to consult the records in the office of the recorder
of Grundy county to ascertain the terms of the deed or its
acknowledgment, but are confined to what appears in the
record before us, and so far as is thus made to appear, Mrs.
Taylor is still entitled to her dower.

What would have been the effect upon her right of dower
if the tax deeds had been shown to be sufficient of themselves
to convey title need not be decided. But a transfer of the
husband's estate, or that of his grantee, by operation of the
Statute of Limitations, could have no greater effect upon her
right of dower, than would a conveyance by her husband in
which she had not joined. Basing our decision then, as we
must, solely upon what is made to appear by the record be-
fore us, the conclusion can not be avoided that the court erred
in refusing to award Mrs. Taylor her dower.

Recurring now to the question whether the powers of sale
in the Merrin mortgages are shown to have been properly
executed by Edward D. Matthews, claiming to act as admin-
istrator of the estate of the deceased mortgagee, we are of the
opinion that some evidence of the death of the mortgagee,
and of the appointment of Matthews as administrator, beyond
the recital of those facts in the administrator's deeds, was
required. It appears from the certificate of evidence, that the
defendant offered and read in evidence the record of the two
deeds purporting to have been executed by the administrator
under the powers of sale, and the accompanying notices of sale
which were referred to in and formed a part of the deeds.
These records were objected to, at the time they were offered,
on the ground that it was not shown that the mortgagee was

dead, or that Matthews was his administrator, or authorized to execute the powers of sale. We think that, to make these deeds competent, *prima facie* proof of these facts was required.

It is true the objections were not addressed specifically to the notices of sale, but the notices were offered only because they were parts of the deeds, and were entitled to be read in evidence on that ground alone, and not as original evidence of the facts therein recited. The objections to the deeds manifestly applied as well to the notices of sale, and it can not be said that they were read without objection, and therefore entitled to be resorted to as evidence of the facts therein recited.

There being then no evidence in the record tending to show that the mortgagee is dead, or that Matthews was his administrator, and as such authorized to execute the powers of sale, there is a material defect in the chain of title.

For the reasons above stated, the decree will be reversed, and the cause will be remanded to the Circuit Court for further proceedings, with leave to either party to introduce further evidence, if so advised.

*Decree reversed.*