McIntosh vs. Marathon Land Co.

McIntosh, Respondent, vs. Marathon Land Company, Appellant.

*April 9 — April 30, 1901.*

*Foreign wills: Authentication: Authority of executor to convey land: Construction of statutes: Evidence: Deeds: Record copy: Interlineations: Tax deeds: Payment of tax: Treasurer's books as evidence: Redemption from tax.*

1. Sec. 2295, Stats. 1898 (providing that, when a will devising lands in Wisconsin has been duly probated in any other state or territory, a duly authenticated copy of such will may be recorded in the office of the register of deeds of any county in which such lands are situated, and shall then have the same effect to pass title to such lands as if probated in Wisconsin, and that the record of such copy shall be presumptive evidence of the authority of any person authorized by such will to convey or dispose of such lands), and sec. 3267 (providing that, upon the filing of an authenticated copy of the original appointment of a foreign executor or administrator in the proper county court, he may exercise any power over the estate, including sales or assignments of the same, which an executor or administrator duly appointed by the proper court of Wisconsin can exercise), are independent sections, intended to cover different situations, sec. 2295 covering cases where, by the terms of the will, lands are devised or authority given to convey, and sec. 3267 cases where the executor or administrator must obtain judicial authority to sell or convey.

2. If the papers attached to the copy of a will, which devised the real property of the testator wherever situate to S. W., appointed her executrix, and authorized her to sell said real estate, show that the will was duly admitted to probate in another state, and are properly authenticated, the copy becomes entitled to record in the office of the proper register of deeds in this state under sec. 2295, and when so recorded becomes presumptive evidence of the authority of S. W. to convey the lands of the testator in this state.

3. A duly authenticated copy of a will probated in Pennsylvania did not show any formal order or judgment admitting the will to probate. A decision of the supreme court of Pennsylvania, introduced in evidence, and the testimony of a member of the Pennsylvania bar, showed that a formal order or decree of probate is not usual in

McIntosh vs. Marathon Land Co.

that state, and that the papers offered in evidence would be admitted in any court of Pennsylvania as proving that the will in question was properly proven and admitted to probate. *Held* that, under sec. 1, art. IV, Const. of U. S. (providing that full faith and credit shall be given in each state to the public records and judicial proceedings of every other state), the copy of the will was admissible in evidence in the courts of Wisconsin.

4. In an action to quiet title plaintiff introduced in evidence, as proof of his title to lands in section 17, the record of a deed which described the property as section 19, with a small "7" written over the "9," the original deed not being produced. The "9" was not obliterated nor was there a partial erasure, and there was no deed or other paper in evidence, signed by the grantor in the deed in question, which tended to show that section 17 was intended. *Held*, not sufficient to prove plaintiff's title to land in section 17.

5. It being the duty of the town treasurer under sec. 1095, Stats. 1898, to note the payment of the taxes upon the tax roll, if paid to him, and the tax roll itself being made presumptive evidence of the facts stated in it under sec. 4162, a tax roll produced and identified by the county clerk, on which appeared opposite the description of the land on which a tax deed had issued, under the column headed "Remarks," the entry "Paid April 15, '64," is sufficient and competent evidence to prove the payment of the tax, and sufficient to defeat the tax deed issued thereon.

6. Under sec. 1095, Stats. 1898, it is the duty of the town treasurer to make a duplicate stub receipt whenever he receives payment of any taxes, and by sec. 1096 he is required to compare the stub receipt book with the tax roll, and return it with the tax roll to the county treasurer. Sec. 1096 further provides that such stub receipt book shall have the same effect, as evidence, as the original receipt. *Held*, that a stub receipt book, properly produced and identified, which showed payment of taxes for which a tax deed had been issued, is competent and sufficient evidence of the payment of the tax and the invalidity of such tax deed. *Pier v. Prouty,* 67 Wis. 218, distinguished.

7. Where lands were sold for taxes in 1864, and tax deeds issued thereon recorded March 1, 1869, entries in the county clerk's sales book of 1864, opposite the descriptions of such lands, to the effect that they were redeemed June 14, 1869, are incompetent evidence to prove the redemption of such lands from such tax, since they purported to have been made at a time when no officer was empowered to receive redemption money and when no redemption could be made.

McIntosh vs. Marathon Land Co.

APPEAL from a judgment of the circuit court for Marathon county: W. C. SILVERTHORN, Circuit Judge. *Affirmed in part; reversed in part.*

This is an action brought under sec. 3186, Stats. 1898, to quiet the title to several hundred acres of unoccupied land in Marathon county, Wisconsin. The complaint alleges the plaintiff's title to said lands, and that the defendant obtained and recorded a tax deed thereof in 1897, which is alleged to be void on account of errors and irregularities in the tax proceedings, and demands judgment vacating and canceling such deed. The answer denies the plaintiff's title, and alleges the validity of its tax deed. Upon the trial the plaintiff offered record evidence tending to show a chain of title to all of the lands from the United States to himself, as well as evidence showing fatal defects in the defendant's tax deed. The invalidity of the tax deed was not, and is not now, contested, but defendant claimed that the proof did not show that the plaintiff had title to the lands.

In the plaintiff's chain of title it appeared that the title to all of the lands was at one time in one Henry Walton. In order to prove the transfer of the title from Walton to plaintiff's grantor, the plaintiff offered in evidence the record of a deed from one Sophia Walton as executrix of the will of Henry Walton, deceased, executed March 24, 1887, reciting the death of Henry Walton September 15, 1886, and the subsequent probate of his will in Philadelphia, with certain provisions of said will purporting to transfer the title of said lands to Sophia Walton, with the power to convey the same. The plaintiff also offered in evidence a certified copy of the will of said Henry Walton, appearing to have been executed by the testator July 1, 1885, the provisions of which will it is not necessary to state, except to say that, after sundry bequests of personal property, the testator's real and personal estate is given to Sophia Walton, charged with certain duties, and she is given authority to make, execute, and deliver suf-

ficient deeds of said real estate, and is appointed executrix of said will. Attached to the alleged copy of the will were the following official certificates:

"City and County of Philadelphia — ss.:
		"Register's Office, September 21st, 1886.
"Then personally appeared U. F. Muzzarelli and F. Y. Austin, the subscribing witnesses to the foregoing last will of Henry Walton, deceased, and on their solemn oath did say that they were present, and did see and hear Henry Walton, deceased, the testator therein named, sign, seal, publish, and declare the same as and for his last will and testament, and that at the doing thereof he was of sound disposing mind, memory, and understanding, to the best of their knowledge and belief.
				"U. F. Muzzarelli.
				"F. Y. Austin.
"Sworn and subscribed before me the above date.
			"Wm. G. Shields,
				"Deputy Register.
"City and County of Philadelphia — ss.:
		"Register's Office, September 21st, 1886.
"I do swear that as the executrix of the foregoing last will and testament of Henry Walton, deceased, I will well and truly administer the goods and chattels, rights and credits, of said deceased according to law, and that I will diligently and faithfully regard and truly comply with the provisions of the law relating to collateral inheritance; that the said testator died on the 15th day of September, A. D. 1886, at 9:50 o'clock p. m.
			"Sophia Walton,
				"138 West Chelton Ave.,
					"Germantown, Pa.
"Sworn and subscribed before me the date above mentioned, and letters testamentary granted unto her.
			"Wm. G. Shields,
				"Deputy Register.
"Commonwealth of Pennsylvania, ⎫ ss.
"City and County of Philadelphia, ⎭
			"Register's Office, April 18th, 1898.
"I, Horatio B. Hackett, register of wills and *ex officio* clerk of the orphans' court for the city and county of Philadelphia, in the commonwealth of Pennsylvania, do hereby certify the foregoing to be a full and complete copy of the

last will and testament of Henry Walton, deceased, together with the probate thereof, upon which letters testamentary were granted unto Sophia Walton on the 21st day of September, A. D. 1886; that I have compared the foregoing copies with the original instruments of record in said office; and that the same are true copies thereof and transcripts therefrom, and from the whole thereof, as the same remains on file and of record in this office.

"In testimony whereof, I have hereunto set my hand and official seal at Philadelphia the date above.

"HORATIO B. HACKETT,

[Official seal.]      "Register of Wills and Ex Officio Clerk

"of the Orphans' Court.

"State of Pennsylvania, } ss.
"Philadelphia County, }

"I, William B. Hanna, president judge of the orphans' court of Philadelphia county, do certify that the foregoing certificate and attestation made by Horatio B. Hackett, Esq., register of wills and *ex officio* clerk of said orphans' court, whose name is thereto subscribed, and seal of his office affixed, are in due form and made by the proper officer. In testimony whereof, I have hereunto set my hand this 18th day of April, in the year of our Lord one thousand eight hundred and ninety-eight (1898).

"WILLIAM B. HANNA,

"[L. S.]      President Judge.

"State of Pennsylvania, } ss.
"Philadelphia County, }

"I, Horatio B. Hackett, Esq., register of wills and *ex officio* clerk of the orphans' court of Philadelphia county, do certify that the Honorable William B. Hanna, by whom the foregoing attestation was made, and who has thereunto subscribed his name, was at the time of making thereof, and still *is*, president judge of the orphans' court of Philadelphia county, duly commissioned and sworn, to all whose acts, as such, full faith and credit are and ought to be given, as well in courts of judicature as elsewhere. In testimony whereof, I have hereunto set my hand and affixed the seal of the said court this 18th day of April, in the year of our Lord one thousand eight hundred and ninety-eight (1898).

"HORATIO B. HACKETT,

[Official seal.]      "Register of Wills and Ex Officio Clerk

"of the Orphans' Court."

The plaintiff also introduced the record of the same papers in the office of the register of deeds of Marathon county, showing that they were all duly recorded in said office December 6, 1898. Due objection was made by the defendant to all of this evidence, but it was all received.

As to one tract of the land in question (being the N. E. ¼ of the S. W. ¼ of section 17) one deed in the plaintiff's chain of title was specifically objected to because the record of the deed (the original not being produced) described the land conveyed as being in section 19; a small and faint figure "7" being written directly above the figure "9," but the figure "9" not being erased. This deed was objected to on the ground that it did not cover any land in section 17, but the deed was received in evidence.

The defendant, in order to show that the plaintiff had no title to a part of the lands claimed, offered in evidence the record of three tax deeds executed to Marathon county: one covering the S. W. ¼ of section 17, recorded March 23, 1868; one covering the N. ½ of the S. E. ¼ of section 5, recorded March 1, 1883; and one covering the N. W. ¼ of section 20, recorded March 23, 1868. In order to meet this evidence, the plaintiff offered certain documentary evidence tending to show that the taxes for which said last-named deeds were issued had been paid and redeemed, the nature of which evidence will appear from the opinion.

The court found the plaintiff's title good to all of the lands claimed and the defendant's tax deed void, and ordered judgment for the plaintiff on payment of the amount of taxes due on the defendant's tax deed, which amount was agreed upon and deposited in court. Upon this finding judgment for the plaintiff, removing the cloud and canceling the tax deed, was rendered, and the defendant appeals.

For the appellant there was a brief by *Brown, Pradt & Genrich,* and oral argument by *Neal Brown.*

For the respondent there was a brief by *Bump, Marchetti & Bump,* counsel, and oral argument by *E. L. Bump.*

WINSLOW, J.   The defendant's contentions were three in number: first, that the alleged will of Henry Walton was not sufficiently certified to show that it had ever been probated, and that neither it nor the deed of the alleged executrix was admissible in evidence, nor sufficient, if admissible, to convey any title; second, that the record of the deed of the N. E. $\frac{1}{4}$ of the S. W. $\frac{1}{4}$ of section 19 was not admissible in evidence as a deed of any part of section 17, notwithstanding the appearance of the figure "7" immediately above the figure "9;" and, third, that the documentary evidence introduced as tending to show the payment or redemption of the taxes upon which the tax deeds to Marathon county were based was inadmissible, and does not prove such payment or redemption.

1. Doubtless the defendant is correct in its contention that the plaintiff cannot maintain an action to quiet title under sec. 3186, Stats. 1898, unless he proves that he has legal title to the land, or owns a valid lien or incumbrance thereon.   This conclusion follows necessarily from the plain wording of the section, which only grants the right to bring the action to a person "having legal title to land," or "being the owner and holder of any lien or incumbrance on land." If, therefore, the probate of the alleged will of Henry Walton was not sufficiently proven by the papers offered in evidence, or if the deed from the executrix was not admissible, the plaintiff's proof of title failed, and he cannot recover. By sec. 2295, Stats. 1898, it is provided in substance that, when a will devising lands in this state has been duly probated in any other state or territory, a duly authenticated copy of such will may be recorded in the office of the register of deeds of any county in which such lands are situated, and shall then have the same effect to pass title to such

lands as if probated in this state, and that the record of such copy shall be presumptive evidence of the authority of any person authorized by such will to convey or dispose of such lands. In the case of *Wells, Fargo & Co. v. Walsh*, 88 Wis. 534, this section was construed, and it was held that, where its terms were complied with, the title to property devised in trust by the foreign will passed to the trustee. We are unable to see any defect in the logic of that case, nor do we perceive any reason for now reviewing it. It is claimed, however, that this section does not stand alone, but must be construed with sec. 3267, Stats. 1898, which provides that, upon the filing of an authenticated copy of the original appointment of a foreign executor or administrator in the county court, he may exercise any power over the estate, including sales or assignments of the same, which an executor or administrator duly appointed by the proper court of this state can exercise. It is entirely apparent that the two sections named are independent sections, intended to cover different situations. Sec. 2295 is intended to cover cases where, by the terms of the will, lands are devised, or authority given to convey, such as the case now before us, while sec. 3267 is intended to provide for cases where the executor or administrator must obtain judicial authority to sell or convey lands. The will in question here not only gave to Sophia Walton all the real property of the testator, wherever situate, but also appointed her as executrix, and authorized her to sell such real estate and execute and deliver deeds thereof in fee simple to the purchasers. The case therefore comes clearly within the provisions of sec. 2295, *supra;* and if the papers attached to the recorded copy show that it was duly admitted to probate by the proper court of Pennsylvania, and are duly authenticated, then it was entitled to be recorded in the register's office of Marathon county, and when so recorded must have the effect provided by the section named.

McIntosh vs. Marathon Land Co.

There is no contention made that the authentication is in any respect defective, but it is said that there is no order or judgment admitting the will to probate. It is true that there does not appear in the record any formal order admitting the will to probate, such as is usually made in the probate courts of this state; but it appears by a decision of the supreme court of Pennsylvania, which was introduced in evidence by the plaintiff (*Holliday v. Ward*, 19 Pa. St. 485), as well as by the testimony of a member of the Pennsylvania bar, that a formal decree of probate is not usual in that state, and that the papers here presented would be admitted in evidence in any court of Pennsylvania as proving that the will was properly proven and admitted to probate. Such being its effect in the courts of Pennsylvania, such must be its effect in the courts of Wisconsin, under sec. 1, art. IV, of the federal constitution. *Parker v. Stoughton M. Co.* 91 Wis. 174. It follows that the appellant's first contention cannot be sustained.

2. As to the second contention, however, we can arrive at no conclusion except that the plaintiff's title was not proven. This contention involved simply the title to one tract of forty acres of land in section 17. One of the deeds in the chain of title, and which was absolutely essential to the plaintiff's title, described the land conveyed or attempted to be conveyed as being in section "19." Respondent claims that this was evidently a mistake, and that section 17 was intended, principally because upon the record of the deed a small and faint figure "7" appears just above the "9." The "9," however, is not erased, nor in any way obliterated. It remains just as originally written. It seems probable that it was an error, but there is really nothing to show it. Had the "9" been partially erased or obliterated, and the "7" written over the erasure, it might, perhaps, be presumed that the recording officer had made a mistake in copying the deed into the record, and afterwards corrected it to

McIntosh vs. Marathon Land Co.

comply with the original deed; but such is not the case. 2 Devlin, Deeds (2d ed.), § 698. There is no other deed or paper in evidence, signed by the grantor in the deed in question, which tends to show that section 17 was intended; nor is there anything on the face of the deed which demonstrates that the record is erroneous. Upon the whole case, we think that we should be deciding without evidence if we were to hold that section 17 was intended, where section 19 is plainly written. As to this forty acres, therefore, the plaintiff's title is not proven, and he cannot recover.

3. As to the ancient tax deeds held by Marathon county upon a part of the lands in question, the situation and proof was this: The defendant offered in evidence the record of the tax deeds covering, respectively, the S. W. ¼ of section 17 and the N. W. ¼ of section 20 in the town of Texas, both being issued for the taxes of 1863 upon the sale of 1864; also the record of a tax deed covering the N. ½ of the S. E. ¼ of section 5, issued for the tax of 1878, sale of 1879. In order to defeat the two first-named deeds, the plaintiff offered the tax roll of the town of Texas, which was produced and identified by the county clerk, in which appears an entry opposite each of the descriptions in the column marked "Remarks," "Paid April 15, '64." These entries were objected to as insufficient to show payment, and as incompetent. We do not perceive in what respect the entries were either insufficient or incompetent. It was the duty of the town treasurer to note the payment of the taxes upon the tax roll, if paid to him. Sec. 1095, Stats. 1898. The tax roll itself is made by the statute presumptive evidence of the facts stated in it. Sec. 4162, Stats. 1898. The entries upon the roll must be held as competent and sufficient evidence to prove the payment of the taxes named.

As to the N. ½ of the S. E. ¼ of section 5, the plaintiff offered the stub receipt book of the town for the year 1878, in which appeared a stub receipt, signed by the town treas-

McIntosh vs. Marathon Land Co.

urer, showing payment of the taxes upon said land for 1878. This, also, was objected to as incompetent; and the case of *Pier v. Prouty*, 67 Wis. 218, is relied upon to support the objection. By sec. 1095, Stats. 1898, it is made the duty of the town treasurer to make a duplicate stub receipt whenever he receives payment of any taxes; and by sec. 1096, Stats. 1898, he is required to compare the stub receipt book with the tax roll, and return it with the tax roll to the county treasurer.    Sec. 1096 further provides that such stub book shall have the same effect as evidence as the original receipt. Under these sections there seems no room to doubt but that the stub receipt was competent and sufficient evidence of the payment of the tax. While it was said in *Pier v. Prouty*, *supra*, that such stub book was incompetent evidence, it seems very clear that sec. 1096 was not called to the attention of the court, and was not in mind.    It cannot be considered as controlling, in the face of the express provisions of the statute.

The conclusion reached as to the three ancient tax deeds held by the county is that the evidence sufficiently shows that the taxes were all paid, and hence that the deeds were void.

As to the two parcels of land in the town of Texas, the plaintiff also offered in evidence certain entries in the county clerk's sales book of 1864, opposite the descriptions of said parcels, to the effect that the taxes thereon were redeemed by Henry Walton June 14, 1869.    These entries were objected to as incompetent evidence, and we think they were clearly incompetent.    They were made, as appears on their face, more than a year after tax deeds had been issued and recorded, and when no redemption could be made.    No officer being empowered to receive redemption moneys at that time, it seems plain that no entry purporting to show such a receipt could be admissible.

*By the Court.*— As to the N. E. ¼ of the S. W. ¼ of section 17 the judgment is reversed, and as to the remainder

of the judgment the same is affirmed, and the action is remanded with directions to modify the judgment of the circuit court in accordance herewith. The appellant will recover costs to be taxed, except that no printing will be allowed.