EMMA F. CAMPBELL *vs.* ELLA V. WHITEHOUSE.

Piscataquis.     Opinion April 11, 1923.

*.The continuity of holding by recorded deeds not broken by a reasonable time inter-*
*· vening between the execution and the recording of a deed.     The rule for the*
*interpretation of deeds is the expressed intention of the parties gathered from*
*the whole instrument, but the intention must be effectively expressed,*
*not merely surmised.     Privity, such as will authorize the tacking*
*of possessions, exists between two successive holders where*
*the latter takes under the earlier by descent.     Payment*
*of taxes may be shown either by the collector's*
*receipt, or by entries in his books and official*
*records.     A tax receipt is original evi-*
*dence of payment, but not conclusive,*
*sufficient till invalidated by proof.*

The continuity of holding by recorded deeds is not broken by reason of the fact
that a period of twenty-eight days elapsed between the date of the execution
of a deed and the date of its record.     A reasonable time must ordinarily inter-
vene between the date of the deed and its record.     This necessary and reason-
able interval will not deprive parties of the protection of a Statute.

The cardinal rule for the interpretation of deeds is the expressed intention of
the parties, gathered from all parts of the instrument, giving each word its
due force, and read in the light of existing conditions and circumstances.     It
is the intention effectually expressed, not merely surmised.     Description in
a deed which conveys "one half right, title and interest in and to a one undivided
half of a certain piece or parcel of land" can be held to convey only one fourth
of the land.

Privity, such as will authorize the tacking of possessions, exists between two
successive holders where the latter takes under the earlier by descent.

While payment of taxes may be shown by the receipt of the collector of taxes,
or other officer authorized to receive them, yet this is not the only method of
proof, for the fact may be shown by the entries in the books and official records
of the tax office.

The giving of a receipt for taxes by the collector is an official act which the statute
requires him to perform.     The manifest purpose of the statute is to furnish
the taxpayer with written evidence of payment.     The receipt is therefore
original evidence; not conclusive, but sufficient till invalidated by proof.

On report.   This is a writ of entry to recover a lot of wild land numbered one hundred and eleven, containing one hundred and sixty acres, situate in the town of Wellington.   The general issue was pleaded with a brief statement claiming title under the provisions of R. S., Chap. 110, Sec. 18, while the plaintiff claimed title by virtue of certain conveyances, beginning with a warranty deed, dated February 18, 1860, given by Abbott R. Davis to Granville S. Seaverns, and recorded February 22, 1860.   At the conclusion of the testimony by agreement of the parties the cause was reported · to the Law Court.   Judgment for the plaintiff for an undivided five twelfths of the premises.

The case is fully stated in the opinion.

*Harry R. Coolidge,* for plaintiff.

*Hudson & Hudson,* for defendant.

SITTING:   CORNISH, C. J., SPEAR, PHILBROOK, DUNN, MORRILL, DEASY, JJ.

PHILBROOK, J.   This is a writ of entry to recover a wild land lot lying in the incorporated town of Wellington.   The tract is known and referred to in the declaration and testimony as lot number one hundred eleven, according to the plan and survey of said town of Wellington, containing and one hundred sixty acres.

The plaintiff claims title by virtue of certain conveyances, beginning with a warranty deed, dated February 18, 1860, given by Abbott R. Davis to Granville S. Seaverns, and recorded February 22, 1860.   In that deed Davis recites that his title was obtained by warranty deed from Charles Wyman dated November 11, 1859, and duly recorded.   The Wyman deed was not offered in evidence. It appears that Granville S. Seaverns possessed the lot until his death, which occurred on February 25, 1892.   He died intestate, survived by a widow, and, as his only heirs, the following named children: Adelaide S. Seaverns, Martha E. Seaverns, Granville F. Seaverns, Marion J. Glover and Gertrude L. Bowen.   The widow died January 18, 1910.   Marion J. Glover died September 13, 1906, leaving no children and no surviving husband.   Adelaide died June 7, 1913, testate; her interest in the real estate in question passing by devise to her sister, Martha E. Seaverns.   Granville F. Seaverns

died October 2, 1915. Under date of November 1, 1913, Martha E. Seaverns, a single woman, in her individual capacity, and as sole executrix of the will of Adelaide S. Seaverns, together with Granville F. Seaverns and his wife, and Gertrude L: Bowen and her husband, describing themselves as being the sole surviving heirs of Granville S. Seaverns, and being all the heirs and devisees of the deceased heirs and widow of the said Granville S. Seaverns, gave a quitclaim deed of the land in dispute to Roscoe G. Jones. This deed was recorded June 20, 1914. On June 17, 1914, Jones, by warranty deed, conveyed the premises to Joseph Stewart and Murl Jones, this deed also being recorded June 20, 1914. On the same June 17, 1914, by mortgage deed recorded on the same June 20, 1914, Stewart and Jones conveyed the premises to Harry R. Coolidge. The latter foreclosed his mortgage by publication, the first publication being July 17, 1919, the affidavit of foreclosure being dated September 13, 1920 and recorded September 16, 1920. By quitclaim deed dated February 5, 1921, recorded February 7, 1921, Coolidge conveyed the premises to Emma F. Campbell, the plaintiff. The plaintiff's title down to and including the deed from Roscoe G. Jones to Joseph Stewart and Murl Jones is proved by the same deeds and by the deposition of Martha E. Seaverns as was plaintiff's title in *Joseph Stewart and Murl Jones*, vs. *James S. Small*, et als., 119 Maine, 269, relating to lot ninety in Wellington, another lot in the same Seaverns title, in which case this court declared that the plaintiffs, Stewart and Jones, had a "true record title." The plaintiff in the case at bar, therefore claims "a true record title" to the land in controversy by reason of those deeds and deposition plus the mortgage to Coolidge, its foreclosure, and the conveyance from Coolidge to her.

The defendant relies upon the provisions of R. S., Chap. 110, Sec. 18. It is therefore incumbent upon her to prove; (1) that for twenty years next prior to the commencement of the action she, and those under whom she claims, have continuously claimed the premises under recorded deeds; (2) and have, during said twenty years, paid all taxes assessed on said lands; (3) and have, during said twenty years, held such exclusive, peaceable, continuous and adverse possession thereof as comports with the ordinary management of such lands in this state.

TWENTY YEARS CLAIM UNDER RECORDED DEEDS.

The defendant produced deeds as follows: (1) Quitclaim deed of "the whole of lot numbered (111) one hundred and eleven, containing one hundred and sixty acres, more or less," from Reuben Whitehouse, land agent for the town of Wellington, to John Huff. This deed is dated March 11, 1875, and recorded April 3, 1882. (2) Quitclaim deed of the same premises from John Huff to Green G. Roberson, dated October 18, 1881, recorded April 3, 1882; (3) Quitclaim deed of the same premises from Green G. Roberson to Benjamin D. Libby; dated November 16, 1882, recorded April 14, 1883. (4) Quitclaim deed of "one undivided half of lot numbered one hundred and eleven" from Benjamin D. Libby to Brice H. Libby, dated May 5, 1883, recorded June 2, 1883. (5) Quitclaim deed of this undivided half from Brice H. Libby to Ella V. Whitehouse, the defendant, dated January 17, 1908, recorded February 14, 1908. (6) Quitclaim deed of one undivided half of the premises from Benjamin D. Libby to Isaiah H. Whitehouse, dated December 4, 1882, recorded June 2, 1883. (7) Quitclaim deed of "one half right, title and interest in and to a one undivided half of a certain piece or parcel of land situated in said Wellington and described as follows; to wit; it being one undivided part of lot numbered one hundred and eleven (111) containing one hundred and sixty acres more or less," from Isaiah Whitehouse to Leonard Whitehouse, dated November 29, 1883, recorded February 26, 1884. (8) Warranty deed of "one undivided half of a lot of land situated in said Wellington, said lot being numbered one hundred and eleven (111) and containing one hundred and sixty acres more or less," from Leonard Whitehouse to Ivory L. Whitehouse, dated March 11, 1902, recorded March 14, 1902. It appears that Ivory L. Whitehouse is the deceased former husband of the defendant, and that he died January 7, 1904, intestate, leaving the defendant as his widow and also leaving one child, Gladys E. Whitehouse, who is still living.

It is contended by the plaintiff that the deeds, and record thereof, offered by the defendant, do not prove continuous claim under recorded deeds for the statutory period. As to the deed of the undivided half to the defendant, which may be referred to as the Brice H. Libby half, the plaintiff calls attention to the fact that a

period of twenty-eight days elapsed between its date and the date of its record. It is claimed that this delay broke the continuity from Brice H. Libby. Attempt is made to substantiate this claim by citing *Daugherty* vs. *Manning*, Tex. Civil App., 221 S. W., 983, where the court said, "It is our opinion that such instruments must be as promptly filed for record as is possible and the delay must be a reasonable one and free from any gross negligence in order to comply with and secure the benefits of the Statute." But the plaintiff does not cite *De La Vega* vs. *Butler et al*, 47 Texas, 529, where the court said, "A reasonable time must ordinarily intervene between the date of the deed and its record. . . . This necessary and reasonable interval certainly will not deprive parties of the protection of the statute." Nor does the plaintiff cite *Jack et al.* vs. *Dillon*, Tex. Civil App., 23 S. W., 645, where there was a period of thirty-eight days between date and record of the deed, and in which case the court said that instantaneous record of the deed is neither practicable nor required. "A reasonable time is allowed for such purpose," said the court. We hold that the break in continuity claimed by the plaintiff, as to the Brice H. Libby half of the premises is without foundation or merit.

As to the remaining undivided half of the premises other questions arise. Going back to the deed from Isaiah H. Whitehouse to Leonard Whitehouse, we have already seen that the language of description is "one half right, title and interest in and to a one undivided half of a certain piece or parcel of land situated in said Wellington and described as follows, to wit; it being one undivided part of lot numbered one hundred and eleven (111) containing one hundred and sixty acres more or less." The defendant claims that from other testimony introduced as to the intention and conduct of the parties in interest, as well as from the deed, we should decide that an undivided half of the whole tract was the portion intended. The plaintiff claims that one half of one half, or a quarter of the premises was quitclaimed. We hold in favor of the plaintiff upon this contention. "The cardinal rule for the interpretation of deeds is the expressed intention of the parties, gathered from all parts of the instrument, giving each word its due force, and read in the light of existing conditions and circumstances. It is the intention effectually expressed, not merely surmised. This rule controls all others." *Penley* vs. *Emmons*, 117 Maine, 108; *Perry* vs. *Buswell*, 113 Maine,

399.   It is true that Ivory L. Whitehouse also received from Leonard Whitehouse a warranty deed of an undivided half of the whole premises, but this deed was dated March 11, 1902, recorded March 14, 1902, a date less than twenty years prior to the date of the writ, which is February 8, 1921.   Clearly, therefore, Ivory L. Whitehouse had not claimed for twenty years under the recorded warranty deed of Leonard Whitehouse.   Since the twenty-year period prior to the date of the writ began February 8, 1901, we find Ivory L. Whitehouse then alive and holding, by himself and those under whom he claimed, for a period in excess of twenty years, an undivided fourth of the land.   Upon his death, by the provisions of our statute, one third of his interest in fee descended to his wife, the defendant, and two thirds to his living daughter.   *Whiting* vs. *Whiting*, 114 Maine, 382.   Privity such as will authorize the tacking of possessions exists between two successive holders where the latter takes under the earlier by descent.   2 C. J. 87, and cases there cited.   Hence the defendant can tack her possession of one third of the one fourth which her husband held under recorded deeds for the statutory period.   We are unable to discover by rule of law, or from the testimony in the record, how the defendant can successfully claim possession for twenty years under recorded deeds, or by tacking, to the two thirds of one fourth which descended at the death of Ivory L. Whitehouse to his daughter.

PAYMENT OF TAXES.

While payment of taxes may be shown by the receipt of the collector of taxes, or other officer authorized to receive them, yet this is not the only method of proof, for the fact may be shown by the entries in the books and official records of the tax office.   *Taylor* vs. *Lawrence*, 148 Ill., 388; 36 N. E., 74; *Webb* vs. *Ritter*, 60 W. Va., 193; 54 S. E., 484.   In *McIntosh* vs. *Marathon Land Co.*, 110 Wisconsin, 296, 85 N. W., 976, an entry upon the tax roll "Paid Apr. 15, '64" was held to be competent and sufficient evidence of payment of the tax.

Plaintiff says there is no proof of payment of the tax of 1902 upon the Brice H. Libby half of the property.   The assessment was $1.40.   As tending to prove such payment the tax collector's book for that year was produced.   The collector, Marcellus Ward, was dead.   His

son testified that it was his father's custom, when any one paid his tax, to mark a cross upon the book, "He crossed it right out when they paid their tax" said the witness. Upon this collector's book for that year, 1902, the Brice H. Libby tax was thus crossed. Precisely the same testimony was offered to prove payment of the tax for 1903, the amount being $1.65. The tax for 1905 was $1.56. As to payment of this tax no collector's book was offered. To prove such payment the defendant produced the town treasurer's book showing settlement in full with I. M. Huff who succeeded Mr. Ward as tax collector. This testimony is given by John F. Frye who produced the treasurer's book and Millard F. Whitehouse, chairman of the board of selectmen for 1905. If the payment of the tax for 1905 were an isolated transaction with no evidence of payment of preceding or succeeding taxes, we might properly doubt the sufficiency of the evidence offered. But the case is before us upon report and as to decision of facts we act with jury powers. That the tax was paid on the Brice Libby half in years before and after 1905, that nothing in the record shows any necessity of action to enforce payment of the 1905 tax because of deliquency, that the amount was so small, and the length of time since payment was due, together with other testimony in the case, justify us in finding, from all legitimate inferences to be drawn from the testimony in this particular case, that the tax for 1905 was paid. "The mere duty of the owner of property to pay the taxes thereon raises no presumption that he has paid them, although the fact that he has paid the taxes on particular property for a series of years may warrant a presumption of payment as to the taxes of one particular year for which he cannot show a receipt, and it may be presumed that the tax of a particular year was paid from the fact that it was not included in the tax bills of succeeding years. It is also held that a presumption of payment may arise from mere lapse of time if sufficiently long continued. It will be presumed that payments made on tax assessments were made by the party rendering the land for taxation," 37 Cyc. 1167, and cases there cited. Concerning the payment of taxes on the Brice H. Libby half for the other years in the twenty-year period the plaintiff does not appear to contend and we hold that such payment is sufficiently proved.

But the plaintiff claims that as to the Leonard Whitehouse portion, taxed to him from 1895 to 1901, there is no legitimate evidence

of payment of taxes as required by the statute. In proof of such payment the defendant offered receipts for payment of the taxes for 1895 and 1896 signed by A. C. Curtis, Collector; for 1897 signed by E. W. King, Collector; for 1898 signed by W. H. Pease, Collector; for 1899 signed by Albert Ward, Collector; for 1900 signed by I. M. Huff, Collector; and for 1901 signed by Alphonso Davis, Collector. These receipts were found among the Leonard Whitehouse deeds and other papers. The plaintiff objects to the introduction of these receipts on the ground that their execution was not proved. The defendant testified, as of her own knowledge, that Leonard paid the taxes on lot 111 a number of times but could not remember the years in which he so paid. That the various persons purporting to sign these receipts were the collectors for those years was admitted and the receipt of payment in each case is upon the official notice to the taxpayer as to the amount due. "While receipts given by parties to the suit are admissions, and are admissible in evidence as such, it is doubtless true that receipts given by third parties are merely unsworn declarations and heresay, and hence inadmissible." *Littlefield* vs. *Cook*, 112 Maine, 551; *Silverstein* vs. *O'Brien*, 165 Mass., 512. "But there are cases," said the court in *Ferris* vs. *Boxell et als.*, 34 Minn., 262, 25 N. W., 592, "where a receipt by a third party, in connection with other facts, may be competent evidence; for example, when the person to whom the payment is made is pointed out by law, as in the case of payment of taxes to public officer." In *Johnston* vs. *Scott*, 11 Mich., 231, it was held that a collector's receipt for taxes is an official paper which the law requires him to give, and is therefore evidence of the payment of the tax in suits between third persons. "The court was correct," it was said in that case, "in holding the receipt prima facie evidence of payment. It does not fall within the rule which excludes hearsay evidence nor does it rest upon the principle which admits entries made by third persons against their interest, or in the ordinary course of business. The giving a receipt for taxes by the township treasurer is an official act which the statute requires him to perform. The manifest purpose of the statute, we think, was to furnish the tax payer with written evidence of payment. . . . The receipt is therefore *original* evidence; not, it is true, conclusive, but sufficient till invalidated by proof." In our own State, R. S., Chap. 11, Sec. 17, provision is made which compels a tax collector or constable to give a

receipt when a tax is paid. We hold that the tax receipts given to Leonard Whitehouse were admissible, and since no proof was offered to invalidate the fact of payment, that such fact was properly and sufficiently proved.

## POSSESSION FOR TWENTY YEARS.

It should here be observed that adverse possession under common law principles do not govern in this case, but statutory provisions obtain, whereby the defendant claims by color of title. This fact affects both the extent and nature of the possession necessary to be shown. The law is too well settled to need citation of authorities that when one enters upon a tract of land under color of title, and is in possession of part thereof, he is presumed to be in possession of the whole. *Farrar* vs. *Eastman*, 10 Maine, 195; *Gardner* vs. *Gooch*, 48 Maine, 487; *Roberson* vs. *The Downing Co.*, 120 Georgia, 883; 48 S. E. 429; Am. State Reports 128, and cases there cited. Thus the extent of possession is fixed. The statute declares that the possession shall be "such exclusive, peaceable, continuous, and adverse possession thereof as comports with the ordinary management of such lands . . . in this state."

Rehearsal of and comment upon the testimony would be of little value or interest except to the parties, and we content ourselves by stating that careful examination of the record shows that, as to the character of the occupancy, the defendant prevails. But by reason of what we have already pointed out the defendant can hold only the Brice Libby half plus one third of one fourth of the other half. The judgment must therefore be;

> *Judgment for plaintiff for*
> *an undivided five twelfths*
> *of the premises.*