Brackett *v.* Persons unknown.

JOHN BRACKETT *& al., Petitioners for Partition, versus* PERSONS UNKNOWN.*

Open, notorious, exclusive and adverse possession of upland adjacent to flats, and of portions of the flats, for twenty years, under a deed duly recorded, gives a title to all the flats fronting such upland and described in the deed.

As a general rule, the title acquired by an entry under a defective deed, and a continued disseizin for more than twenty years, is the same in extent, as if the conveyance had been valid.

No change was made by statute of 1821, c. 62, § 6, as to the effect of an entry under a record title, and a continued disseizin.

A book purporting to be proprietary records, in the handwriting of the clerk, found among his papers after his decease, and remaining ever since in the hands of his executor, is sufficiently proved to justify its admission as evidence, especially when there is no proof that there was ever any other records or clerk.

The neglect of such clerk to deposit the records with the town clerk, after the proprietary ceases to exist, as required by statute of 1821, c. 4, § 3, does not affect the validity of the previous proceedings of the proprietary.

When such records have not been so deposited, the original is admissible in evidence without any certificate of the town clerk to authenticate it.

When certain persons assume under that statute to act as a proprietary, describe themselves as such, and keep a record, the legal presumption, after the lapse of thirty years and more, is that they were proprietors; and the admission of evidence, outside of the record, that they were so in fact, affords no legal ground of complaint.

The fair construction of a return, that notice had been given "by posting a copy in two public places, in, &c.; and by inserting the same in, &c., more than fourteen days previous" to the time of meeting, "as the law directs," is, that the "*posting*" and "*inserting*" were *both* done fourteen days before the time of the meeting.

When a record states, "it was voted," &c., it will be presumed, especially after the lapse of nearly forty years, that the voting was done in the manner provided by law.

Although the doings of some meetings of a proprietary are invalid because they are not legally called, the validity of prior or subsequent meetings is not thereby affected.

The proceedings of such proprietary, at meetings not legally called, may be given in evidence to show the origin of the possession of land by parties claiming by disseizin and adverse occupation, and to give color of title thereto.

* This case has just come into the hands of the present Reporter.

Brackett *v.* Persons unknown.

For the same purpose, a deed, executed by one as the attorney of another, may be given in evidence, without proving the attorney's authority.

Twenty years' adverse occupation of real estate under recorded deeds is an insuperable bar to the maintenance of a petition for partition, whatever may be the legal title of the petitioners.

ON EXCEPTIONS, to the rulings of DAVIS, J.

PETITION FOR PARTITION of certain flats in the city of Portland. Issues were framed and submitted to the jury, whose verdict was for the respondents. The petitioners excepted to certain instructions of the presiding Judge, and to the admission of certain testimony.

The case, so far as relates to the various questions of law raised, is stated in the opinion.

*F. O. J. Smith*, for petitioners.

*E. & F. Fox*, for respondents.

APPLETON, J.—The defendants derive their title to the premises in dispute under conveyances from the Brackett Dower Proprietary, a corporation organized on 4th Sept. 1822, under the provisions of statute 1821, c. 43, and which, having sold all its land, ceased its corporate action in 1824 or 1825.

If the deeds of the defendants or their grantors should be adjudged defective for any cause, they rely for their defence upon open, adverse, notorious and exclusive possession, under a recorded deed, for more than twenty years.

"It was admitted," the case finds, "that the defendants' testimony proved that they, and those under whom they had claimed, had held record titles derived from said proprietors above described, sales by deeds duly executed and severally recorded, and conveying both upland and the flats in front thereof, and have claimed the flats fronting the upland of the Dower lands in question, so conveyed, for a period of more than twenty years prior to this trial, and had, during said period, actually occupied the entire shore line of said flats with a breastwork of about sixty feet deep toward

the channel, and with a wharf about four hundred feet deep and sixty wide in front of a portion of the upland, —that there has been no adverse occupancy of any of said flats or upland by any person during said period, —and, upon this evidence, the Court ruled that, if the jury were satisfied the respondents had been in possession of the upland adjacent to said flats for more than twenty years, under a record claim of title to ownership thereto and of the adjacent flats, and had, under such title, claimed and occupied openly, notoriously, exclusively and adversely, portions of the same, by themselves, or those under whom they claimed, at the end of twenty years they would acquire thereby a title to the whole of the flats fronting such upland, not only to the extent of the flats actually so occupied by or under them as wharves or otherwise, but in regard to all the flats fronting such upland and originally conveyed therewith and included in the deed, and that the actual occupation of a portion of the flats during such period under a duly recorded conveyance thereof with the upland, claiming ownership of the whole of the flats under said deed, and no one occupying adversely any portion of such flats, would vest under the law of the State a complete title to the premises in such occupant."

The instructions of the presiding Judge are clear, precise, guarded, and in strict conformity with the uniform and entire weight of authority. They assume as their basis, what is admitted, the open, notorious, exclusive and adverse occupation of the premises for twenty years, by the respondents, under a recorded deed as therein stated, and without interference or even the assertion of a claim by these petitioners or those from whom they derive their title, during that period.

In *Prescott* v. *Nevers*, 4 Mason, 326, STORY, J., says,— "I take the principle of law to be clear, that where a person enters into land, under a claim of title thereto, by a recorded deed, his entry and possession are referred to such title; and that he is deemed to have seizin of the land co-

extensive with the boundaries stated in his deed, when there is no open, adverse possession of any part of the land so described in any other person." In *Little* v. *Megguier,* 2 Maine, 176, MELLEN, C. J., says, "in such case, though the deed may not convey the legal title, still the possession of a *part* of the land described in it, under a claim of the *whole* and as a disseizin of the true owner, is equivalent to an actual and exclusive possession of the whole tract, unless controlled by other possessions." In *Putnam Free School* v. *Fisher,* 34 Maine, 177, WELLS, J., remarks thus : — if the "tenant entered under a deed recorded, claiming title to the land, and had a visible possession of a *part* of it, such entry and possession would be a disseizin of the true owner of the *whole* tract described in his deed. *Kennebec Purchase* v. *Laboree,* 2 Greenleaf, 275. And in contemplation of law he would have possession of the whole parcel, and it would be as effectual as actual possession." In *Bailey* v. *Carleton,* 12 N. H., 15, PARKER, C. J., says, that the general rule that where a party having color of title enters into the land conveyed, he is presumed to enter according to his title, and thereby gains constructive possession of the *whole* land embraced in his deed, seems to be settled by the general current of authorities. This was again affirmed to be law in *Tappan* v. *Tappan,* 11 Foster, 41; *Hoag* v. *Wallace,* 8 Foster, 553.

It is admitted that the deeds, under which the respondents claim title, cover the flats. "The grantees," remarks SHEPLEY, J., in *Treat* v. *Strickland,* 23 Maine, 243, "have been in possession of lands under deeds recorded. This would have the effect to disseize others, and to give them a seizin of the flats according to the bounds named in the deed, whether they actually occupied the flats or not." Possession under color of title is in law possession of *all* the land described in the deed conferring such color of title lying in the same tract. *Little* v. *Downing,* 37 N. H., 357.

As a general rule, the title acquired by an entry under a defective deed and a continued disseizin for more than

twenty years is the same in extent as if the conveyance had been valid.

The learned counsel for the petitioners relies on the opinion of MELLEN, C. J., in *Proprietors of Kennebec Purchase v. Laboree*, 2 Maine, 275, as determining that the distinction between possession under claim of title or record, and possession without any such claim, was abolished by the statute of this State. Statute 1821, c. 62, § 6. From this he would infer that a title by disseizin under a recorded deed is *only* co-extensive with the actual occupation of the disseizor. But this is an unauthorized inference.

By the common law, when one enters without color of title, his seizin is bounded by his actual occupancy. If under a deed or title, if the true owner be not in actual possession of any part of the land, his seizin extends as far as his deed or title. The purpose of the statute then under discussion was to extend the doctrine of constructive disseizin by a disseisor in possession without claim of title, not to restrict it when the disseizor is in possession under a recorded deed. The statute in question in terms obviates the necessity of fences, and provides that "no part of the premises demanded and defended shall be excluded from the operation of the aforesaid limitation because such part may be wood land or without cultivation." No change is made or intended to be made as to the effect of an entry under a record title and a continued disseizin. Indeed the doctrine of the common law as to the effect of an entry under a deed duly registered is affirmed in the opinion of Mr. Chief Justice MELLEN, in almost the precise terms as stated by the presiding Judge in the case now before us. "The reason is," says he, "the extent and nature of his claim are or may be known by inspection of the public registry. His deed being registered there, gives notoriety to his act and his motives respecting the land he occupies." *Proprietors Kennebec Purchase* v. *Laboree*, 2 Greenl., 286.

The decisions of this Court are in entire agreement with each other and with those of the highest tribunals of other

States on the same subject. The instructions given are in strict accordance with the unvarying current of authorities.

2. The book of proprietary records was sufficiently proved to justify its admission. It is in the handwriting of the Clerk. It was found among his papers after his decease. It has remained in the hands or under the control of his executors for the last thirty years. It is not pretended there is any other book or that there was ever any other clerk.

3. It is contended that, by statute 1821, c. 43, § 3, a place, (the office of the town clerk,) for the safe keeping, and a mode for the authentication (by the town clerk) of the records of a proprietary, organized under the last named Act, were provided, and that, without a compliance with this provision of law, such records, after the *proprietary ceases to exist*, lose their legal validity; whatever may be the proof of their authenticity otherwise; and that a proprietary without a legal record becomes a nullity as much as any other unperfected act of title.

The substance of this proposition is, that, if the records are not deposited as it is claimed they should be, all the preceding action of the proprietary by this *ex post facto* neglect becomes null and void. In other words, that estates, vested by vote or deed by the legitimate action of the proprietary, become divested by the subsequent omission of the corporation to place the records in their proper place of deposit, and this too after deeds have been recorded and the grantees have entered into possession under them. This would be a severe punishment on those who have no control of the records. The proprietary, which has sold, would lose nothing, while their vendees would without fault forfeit their rights. The construction contended for is as absurd as the result would be iniquitous.

By § 8, the clerk last chosen was to continue in office, " notwithstanding the final and total division of such lands and estate as fully, to all intents, constructions and purposes whatsoever, as though there had been no such division made,

and *until* the same records shall be lodged with the clerk of the town where the land lies," &c. The statute does not make it imperative on the proprietary clerk to deposit his records. And, if it did, the clerk only would be liable to punishment for his neglect of duty. It would not affect the preceding acts of the corporation or render them null and void.

The provision is for the benefit of the purchasers of the estates of the proprietary, that there may be a convenient place where its records may be deposited, but, if it is not done, it was not the intention of the Legislature that their estates should be injuriously affected by the failure of the clerk of their grantor to perform his duty.

The same section provides that the town clerk may authenticate copies of records when deposited. But, when the original is produced, it is manifestly superior in trustworthiness to any copy, and needs not the certificate of the town clerk for its authentication.

4. It is objected, the defendants were permitted to prove, independently of the record, that the persons purporting to be proprietors and signing the application for the warrant were proprietors of the Brackett Dower Lands.

The correctness of the course pursued by the presiding Judge is fully established by the case of *Dolloff* v. *Hardy*, 26 Maine, 545, where, in reference to a similar objection, the Court say, — " It is certified in the records that the proprietors met under such application and passed votes; the application signed by them, styling themselves proprietors, is a part of the record. No objection was taken by any one at the meeting to repudiate or annul the doings for this reason." So in *Copp* v. *Lamb*, 12 Maine, 312, it was held that where certain persons had assumed to act as proprietors more than thirty years ago, a stranger could not controvert rights derived from and held under them. It would seem, after this lapse of time, that the presumption of law would be that they were proprietors, and, if so, proof in support of

a legal presumption cannot afford any just ground of complaint.

5. The first meeting of the proprietary was held on 4th September, 1822. It is insisted that it does not appear that sufficient notice was previously given.

The person to whom the warrant was directed certified that he had given notice, &c., "by posting up a copy of said petition and warrant in two public places in this town, (Portland,) viz., at the public house kept by Jacob Coburn, and at the public room of the Cumberland Insurance Co.; and by inserting the same in the Portland Gazette and in the Independent Statesman and Maine Republican, two public newspapers printed in Portland, for more than fourteen days previous to the fourth day of September, A. D. 1822, *as the law directs.*"

The fair construction of the return is, that all was done fourteen days before the 4th of September, the posting as well as the publishing of the notices. The Court will not assume a difference without proof, for the purpose of defeating the proceedings of an ancient proprietary. The posting *and* the inserting are in the same position—and if one was seasonable, so was the other. *Dolloff* v. *Hardy*, 26 Maine, 545.

6. It is urged that it does not affirmatively appear that the votes were collected and numbered according to the interest of the proprietors present, when the same were known, and that consequently the proceedings are void. The record shows that "the proprietors voted," or that "it was voted," &c. The presumption of law after this lapse of time, nearly forty years, is, that the voting was according to law. Where a charter required two thirds to form a quorum and it was stated that on due invitation the corporators met, and it was not usual to mention the names or numbers of those present, this was held to amount to saying that two thirds assented. *Cone* v. *Wodper*, 3 S. & R., 29. When an officer of a corporation is required to be chosen by ballot, the presumption of law is that the choice

is made in the legal mode, that is, by ballot. *Blanchard* v. *Dow*, 32 Maine, 557.

7. It is objected that other meetings referred to were not duly notified, and that the proceedings under such notice were void.

It is apparent that the proprietary was duly organized. If, in some of the meetings, there was a failure to give the required notice, that would not affect the validity of prior or subsequent meetings for which legal notices had been given.

But it is not necessary to consider very carefully the sufficiency of the notices or the legality of all the meetings of the proprietary.

The proprietary having been duly organized, the meetings were legal or not.

If legal, and the proceedings valid, then the respondents have a perfect title by deed.

If not legal, if in some respects defective, they are admissible to show the origin and give color of title to the possession of the respondents. If the paper title were sufficient, there would be no occasion to resort to adverse possession. Where the title is acquired by disseizin under a recorded deed, it is of course, that the title is defective.

"All the authorities," says FOWLER, J., in *Farrar* v. *Fessenden*, 39 N. H., 269, "decide that it is wholly immaterial, as to the effect of an entry and long continued occupation under a colorable title, whether the title be valid or not, and whether the instrument creating it be defective or not." In *Sanborn* v. *French*, 2 Foster, 246, it was held that a married woman's separate deed of her land, though absolutely invalid from its inception, as a conveyance of title, will give color of title to the grantee sufficient to extend an adverse seizin by construction, to the limits of the land described in it. In *Jackson* v. *Newton*, 18 Johns., 355, the deed was defective by reason of not having a seal. In *Gage* v. *Gage*, 10 Foster, 421, the grantee entered under a deed which conveyed no right, by reason of the defective execution of a

Brackett *v.* Persons unknown.

power of attorney, and he, and those claiming under him, remained in possession more than twenty years. The Court, in their opinion, assume the power of attorney as fatally defective, " but," remarks EASTMAN, J., " when an entry is made upon land under color of title, however defective the title may be, the party is presumed to enter according to his title, and his possession to be adverse to all others." *Lund* v. *Parker*, 3 N. H., 49; *Wood* v. *Banks*, 14 N. H., 100. In *Grant* v. *Fowler*, 39 N. H., 101, it was urged that the title under which the plaintiff and his grantors claimed was defective and invalid, but the Court say, " it is not necessary for the purposes of this case to inquire into the sufficiency or validity of that title, since all the authorities concur in holding distinctly that it is wholly immaterial as to the effect of an entry, and continued open, visible, adverse occupation under a colorable title, whether that title be valid or not, or whether the instruments conferring it be defective or not."

The records, therefore, whether the proceedings were in all respects valid or not, were properly admissible as part of the proof to give color of title to those under whom the respondents claim the estates in controversy.

For the same reasons, the deed by Wm. Tyng, as the attorney of Elizabeth Ross, to Joseph H. Ingraham, of Feb. 24, 1798, was properly received, as, if for any reason defective, it gave color of title to one entering under it and continuing in possession.

The petitioners, by the finding of the jury, whatever their legal title, are barred by the limitation of twenty years adverse occupation under recorded deeds. The lapse of time affords an insuperable bar to the petitioners' claim. In the vigorous and eloquent language of PLUMER, M. R., in *Cholmondely* v. *Clinton*, 2 Jac. & Wal., 139, " it is the fixed limit to the remedy, the *tempus constitutum*. One day beyond it is as much too late as one hundred years. This is the peremptory, inflexible rule at law, fixed by positive statutes. No plea of poverty, ignorance or mistake, can be of any avail. However clear and indisputable the title, if

the merits could be inquired into, however demonstratively tortious and wrongful the adverse possession, the fact of such possession, and the time, preclude all investigation of the title. The door of justice is closed. It is a decisive answer to them that it comes too late. That alone is the bar. His title remains, but he has lost his remedy. The statute is founded upon the wisest policy, and is consonant to the municipal law of every country. It stands upon the general principle of public utility. *Interest reipublicae ut sit finis litium.* is a favorite and universal maxim. The public have a great interest in having a known limit fixed by law to litigation, for the quiet of the community, and that there may be a certain fixed period, after which the possessor may know that his title and right cannot be called in question. It is better that the negligent owner, who has omitted to assert his right within the prescribed period, should lose his right, than that an opening should be given to interminable litigation, exposing parties to be harassed by stale demands, after the witnesses of the facts are dead, and the evidence of the title lost."

*Exceptions overruled.*

Tenney, C. J., Cutting, May, Goodenow and Davis, JJ., concurred.