**IRVING PULP & PAPER LIMITED**

v.

**Guy KELLY et al.**

Supreme Judicial Court of Maine.

Argued Oct. 3, 1994.

Decided Feb. 2, 1995.

Edith A. Richardson (orally), Rudman & Winchell, Bangor, for plaintiff.

William J. Smith (orally), Van Buren, Allan Hanson, Caribou, for defendants.

Before WATHEN, C.J., and GLASSMAN, CLIFFORD, DANA, and LIPEZ, JJ.

DANA, Justice.

Irving Pulp & Paper Limited appeals from a judgment entered after a jury trial in the Superior Court (Aroostook County, *Marsano, J.*) awarding title by adverse possession to disputed land to Guy Kelly, Jr., and Tylor Kelly. Among other claims of error, Irving asserts that the trial court erred in failing to instruct the jury regarding the effect of a 1951 judgment in favor of Irving's predecessor-in-title with respect to the same parcel of land. Because we agree, we vacate the judgment.

Irving holds record title to a parcel in Township 17, Range 11, known in the Allagash community as the Wesley lot. In 1985 or 1986, Irving became aware that Guy Kelly, Jr., and his brother, Tylor Kelly, had received deeds to the parcel from their father, John Kelly, dated September 26 and 27, 1985, which they had recorded in the Aroostook County Registry of Deeds. Both deeds contained the following recital: "being a part of the same premises held openly, notoriously and adversely by said John Kelly for a period of over fifty (50) years."

In July 1987 Irving commenced actions for forcible entry and detainer against the Kelly brothers in the District Court in Madawaska, seeking an order granting it, rather than the Kellys, the right to possession of the land described in the 1985 deeds. Both Kellys responded with claims of title by adverse possession. The cases were removed to the Superior Court and consolidated. At the trial, Irving presented evidence of its record title that the Kellys did not dispute.

John Sinclair, who had worked as land agent for Irving and Irving's predecessor-in-title, the Wheatlands, testified that in 1951 he went to the disputed parcel and spoke to John Kelly. Following Sinclair's visit, the Wheatlands brought a lawsuit and recovered judgment in November 1951 against John Kelly "for title and possession." A writ of possession was issued the following month. There was no testimony, however, that either the Wheatlands or Irving ever occupied the disputed parcel after the 1951 judgment.

The trial court instructed the jury regarding the elements of an adverse possession claim. The court did not give Irving's requested jury instruction regarding the effect of the 1951 judgment and Irving did not object following the court's original charge.[1] During their deliberations, the jury asked the court three written questions. The jury first asked for further instructions regarding the criteria for proving adverse possession, and the court repeated its earlier instruction. The second question from the jury, which it subsequently withdrew, was "Can we go back before the 1951 judgment to establish adverse possession?" Shortly thereafter, the jury sent a third note asking: "How far can we go back in time?" The court reinstructed the jury on the elements of adverse possession, and further stated that the jury could go "as far back in time as there is relevant evidence which bears upon all of the elements of adverse possession, all of which must be shown for the 20–year period you decide is the period for determining the question of adverse possession." Irving then objected.[2]

"[W]here the title to a tract of land has been decreed by a competent court to belong to a complainant bringing the suit and that the possession of the defendant is unlawful, such defendant cannot rely upon his prior possession in a subsequent suit to establish title, but can only rely upon the new possession held after the decree." *Busby v. Maus,* 294 Ill. 401, 128 N.E. 564, 566 (1920). *See Rollins v. Blackden,* 112 Me. 459, 465, 92 A.

---

1. Irving's proposed instruction 5 was:

    In December 1951, this court issued a judgment against the defendants' father, John Kelly, and in favor of the plaintiff's predecessor, which established that John Kelly did not have title or right to possession of certain land that the defendants claim.
    You must determine whether the defendants have established title by a period of adverse possession that began after December 1951

and ended before the commencement of this action in July 1987.

2. Irving stated:
    I object to the instruction to the extent I need to preserve the record. I would request further instructions that the jury consider the 1951 judgment and give that whatever weight the jury finds proper.
    The trial court refused to give even this version of Irving's requested instruction 5.

521 (1914), ("nothing short of making entry, *or legal action,* will break the continuity of possession [required for adverse possession]") (emphasis added); *Moore v. Beck,* 664 S.W.2d 15, 18 (Mo.App.1984) (a judgment against the adverse claimant in a prior quiet title action, "though not disturbing the actual possession of [the claimant], has, by its decree of title in the other party not in possession, the effect of interrupting the adverse possession as of the date of such judgment, and the period of limitations must commence anew from that date"). *See also* 2 C.J.S. *Adverse Possession* § 170 ("In order to stop the running of the statute there must be a physical interruption of adverse possession, *or a suit,* or some unequivocal act of ownership which interrupts the exercise of the right claimed and being enjoyed by the adverse claimant.") (emphasis added).

■ The possession necessary to support title by adverse possession must be exclusive and not shared with anyone, including the true owner. *Cates v. Smith,* 636 A.2d 986, 988 (Me.1994); *See Worcester v. Lord,* 56 Me. 265, 269 (1868). By bringing an action, which presumably was accomplished by proper service of process, and by recovering a judgment for title and possession, Irving's predecessors-in-title interrupted the Kellys' exclusive possession. Because Irving's predecessors-in-title seem to have neither enforced the subsequent writ of possession nor occupied the disputed parcel after the 1951 judgment, the Kellys may have begun a new period of adverse possession after November 1951. As a matter of law, however, the 1951 judgment precludes the Kellys from having or claiming any right or title adverse to Irving for any period prior to November 1951. As one commentator observed:

> Starting an action in ejectment or to quiet or register title by the owner and carrying through to a successful conclusion, not discontinued or otherwise disposed of not on the merits, is an interruption, causing the statute to start to run anew if the adverse possession is continued thereafter.

10 *Thompson on Real Property* § 87.13 (David A. Thomas ed. 1994).

■ We also find that the doctrine of *res judicata* precludes the Kellys from claiming adverse possession based on a twenty year period prior to December 1951. The doctrine of *res judicata* bars re-litigation in a present action of all claims that were tried, *or might have been tried,* in a prior action if: (1) the same parties or their privies are involved in both actions; (2) a valid final judgment was entered in the prior action and (3) the matters present for decision were, *or might have been,* litigated in the prior action. *See Currier v. Cyr,* 570 A.2d 1205, 1208 (Me.1990). A cause of action is "the aggregate of connected operative facts that can be handled together conveniently for purposes of trial." *Id.* (quoting *Gurski v. Culpovich,* 540 A.2d 764, 766 (Me.1988)). A judgment by default is just as conclusive on the rights of the parties as a judgment on a demurrer or verdict. *Maddocks v. Gushee,* 120 Me. 247, 249, 113 A. 300, 301 (1921).

John Kelly, born in 1904, testified that he remembered working on the land as a boy around 12 or 14 years old, cutting logs, pulp and firewood. He stated that in 1924 he and his father built a camp for the men, a shelter for the horses, and a cookroom. He further testified that he continued cutting on the land each year, and that he would work on the lot six or eight hours a day and return home at night. This testimony, along with supporting evidence, makes it clear that John Kelly could have asserted a claim of title by adverse possession in 1951, and it was therefore an issue that might have been tried in the 1951 action. Under the doctrine of *res judicata,* Kelly and his privies are therefore precluded from having or claiming any right or title adverse to Irving for any period prior to November 1951.

■ Irving did not make a timely objection to the trial court's first failure to give its requested instruction regarding the effect of the 1951 judgment.[3] Although Irving did object to the court's response to the jury's question about the judgment,[4] we are reviewing pursuant to an "obvious error" standard.

---

**3.** See Note 1.

**4.** See Note 2.

We must therefore determine whether the instructions "were so inadequate and misleading as to leave the jury without the guidance essential to its task." *Gould v. Bangor & Aro. R.R.*, 292 A.2d 837, 843 (Me.1972). Because the jury instructions allowed the jury to consider periods before 1951 to find a 20–year period of adverse possession, the instructions were clearly misleading and inadequate, and they left the jury without the guidance essential to its task.

■ One other issue raised by the parties in this case requires discussion. Although we are vacating the judgment for the reason stated above, we note that the trial court committed an error of law by instructing the jury that without record title occupancy of a portion of an enclosed lot can reasonably be considered to be occupation of the entire tract.[5] "When an entry is made upon a lot of land and a part is occupied without any recorded claim of title, a title by adverse possession is limited to the part actually occupied unless it be part of a farm." *Harkins v. Fuller*, 652 A.2d 90, 92 (Me.1995) (quoting *Banton v. Herrick*, 101 Me. 134, 137, 63 A. 671 (1906)). Of course, whether specific possessory acts are sufficient to establish title through adverse possession can only be resolved in light of the nature of the land, the uses to which it can be put, its surroundings, and various other circumstances. *See McMullen v. Dowley*, 418 A.2d 1147, 1152 (Me.1980). The actual use and occupancy of the land must amount in kind and degree to the use and enjoyment to be expected of the average owner of similar property. *Id.*

The entry is:

Judgment vacated. Remanded for further proceedings consistent with the opinion herein.

All concurring.

---

5. The questioned instruction was as follows:
Where a lot of land is established by a line, if you find any such lines, the occupancy portion of the enclosed lot can reasonably be considered to be the occupation of the entire tract.