MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:      2014 ME 149
Docket:        Pen-13-285
Argued:        June 11, 2014
Decided:       December 23, 2014

Panel:         SAUFLEY, C.J., and ALEXANDER, SILVER, MEAD, GORMAN, and JABAR, JJ.
Majority:      SAUFLEY, C.J., and ALEXANDER, SILVER, MEAD, GORMAN, and JABAR, JJ.
Concurrence:   ALEXANDER, J.


SUSAN C. HARVEY et al.

v.

ADDISON H. FURROW JR. et al.

SILVER, J.

[¶1]  Addison H. Furrow Jr. and Karen R. Lane appeal from a judgment of the Superior Court (Penobscot County, *Anderson, J.*) in favor of Susan C. Harvey on her claims of title by adverse possession and boundary by acquiescence. Harvey cross-appeals from the court's judgment in favor of Furrow and Lane on Harvey's claims for slander of title and trespass.  We conclude that the court properly found each element of adverse possession by constructive possession, and we find no error in the court's resolution of Harvey's claims for trespass and slander of title.  Accordingly, we affirm the judgment.

## I.  BACKGROUND

[¶2]  Furrow and Lane are the owners of record of an irregularly shaped parcel of land on Mattanawcook Lake in the town of Lincoln.[1]  In 1998, Harvey's parents, Jack and Beverly Jensen, conveyed to Harvey a parcel that adjoined the Furrow property to the west, reserving a life estate for themselves.[2]  Parties in interest George, Gloria, David, and Faith Blake (the Blakes) own parcels immediately to the west of Harvey's property.  Harvey and the Blakes, relying on the property description that has appeared in deeds in Harvey's chain of title since 1931, contend that the Harvey-Furrow boundary is a straight line that effectively configures Harvey's lot into a narrow rectangle.  Furrow and Lane, on the other hand, argue that the Harvey-Furrow boundary is made of two diagonal lines that meet at an "elbow."  As a result, the parties disagree about the ownership of a roughly eleven-acre triangular area of land.  *See* Figure 1.

---

[1]  For the sake of simplicity, we refer to this parcel throughout the opinion as the Furrow property.

[2]  The deed also reserved and excepted a small portion of the parcel, which the Jensens had conveyed to Harvey's sister, Lori Jensen-Marin, in 1992.



Figure 1. The configuration of the disputed boundary as advocated by Harvey and the Blakes, on the left, and by Furrow and Lane, on the right. The disputed area is shaded.

[¶3] After some unsuccessful attempts to resolve this dispute, Harvey filed an amended complaint in April 2008 seeking to establish and quiet title to the disputed area and alleging claims of trespass and slander of title.[3] Furrow and Lane counterclaimed, asking the court to confirm their title and award damages for slander of title, common law and statutory trespass, and interference with an economic expectancy. The Blakes, as well as Lori Jensen-Marin, Albert Marin,

---

[3] Harvey claimed title by acquiescence (Count III), practical location (Count IV), and adverse possession (Count V), and sought damages for common law trespass (Count I), statutory trespass (Count II), and slander of title (Count VI). In addition, Harvey argued at trial that she holds superior title to the disputed area by deed pursuant to theories of estoppel by deed and equitable partition. *See* M.R. Civ. P. 15(b) (allowing issues not raised in the pleadings to be tried by express or implied consent of the parties). The court rejected Harvey's claims of title by practical location, estoppel by deed, and equitable partition, and Harvey does not challenge this part of the court's judgment.

4

and Terry McEwen were joined as necessary parties to the action by virtue of their ownership of property adjoining the disputed area.[4]

[¶4]   After extensive discovery and motion practice, the court held a five-day bench trial beginning on March 26, 2012.  At the outset of the trial, the parties stipulated as follows:

> The area depicted on the Harris survey as the lands of Sandra Furrow, Addison Furrow, Jr., Terry McEwen, and Ellery Scott, collectively, defines the boundaries of what was formerly the Milner Farm as described in the deed from William A. Milner, Jr., et al. to Elsie J. Milner and Arthur H. Milner dated August 27, 1930 and recorded in the Penobscot Registry of Deeds in Book 1047, Page 228.

The Harris survey shows the boundary between the Harvey and Furrow properties as the elbow shape advanced by Furrow and Lane.  Witnesses presented evidence related to trespass and slander of title claims, as well as evidence of the prior use of the disputed area.

[¶5]  On May 22, 2013, the court granted judgment in favor of Harvey on her claims of adverse possession and acquiescence and on all of Furrow's and Lane's counterclaims.  The court entered judgment partially in favor of Harvey on her common law trespass claim and awarded her damages of $7500 plus interests and costs.  The court also entered judgment in Harvey's favor on one of her statutory trespass claims, awarding double damages and costs totaling $17,325

---

[4] Only the Blakes have participated in this appeal as parties in interest.  Jack Jensen was also added as a plaintiff and testified at trial, but has since died.

pursuant to 14 M.R.S. § 7552 (2013). The court declined to award treble damages pursuant to section 7552 because it concluded that Furrow did not intentionally cause the damage to Harvey's property. The court entered judgment in favor of Furrow and Lane on each of the remaining claims, including Harvey's claim for statutory trespass damages pursuant to 14 M.R.S. § 7551-B (2013). The court, acknowledging that it was doubtful that any justiciable claims remained, also stated that the Blakes had established a boundary by acquiescence against Furrow. Furrow and Lane timely appealed, and Harvey cross-appealed, pursuant to 14 M.R.S. § 1851 (2013) and M.R. App. P. 2.

## II. DISCUSSION

[¶6] Furrow and Lane contend that the court erred in (1) determining that Harvey had established the elements of adverse possession, (2) determining that Harvey and Blake had established a boundary by acquiescence, and (3) construing the property description in the deed to Harvey's predecessor in title in a manner that contradicted the parties' stipulation. Harvey, in turn, challenges the court's rejection of her slander of title claim, its imposition of a state-of-mind requirement for trespass actions brought pursuant to 14 M.R.S. § 7551-B, and its refusal to award treble damages pursuant to 14 M.R.S. § 7552(4)(B). We address each argument in turn.

6

A.      Constructive Adverse Possession

[¶7]  Typically, an acquisition of title to property through adverse possession is limited to the area of property that has been actually occupied.  *See Irving Pulp & Paper Ltd. v. Kelly*, 654 A.2d 416, 419 (Me. 1995).  Pursuant to the doctrine of constructive possession, however, a person can obtain equitable title to the entire parcel *described in her deed* if she occupies a portion of that parcel in a manner sufficient to establish title by adverse possession.  *Campbell v. Whitehouse*, 122 Me. 409, 417, 120 A. 529 (1923); *see also* 4 Herbert T. Tiffany & Basil Jones, *The Law of Real Property* § 1155 at 815 (3d ed. 1939) (stating that "one having 'color of title,' that is, claiming under what purports to be a valid muniment of title, although he actually occupies a part only of the tract covered by his muniment of title, is to be regarded as in possession of the whole tract"); *Banton v. Herrick*, 101 Me. 134, 138-39, 63 A. 671 (1906); *Brackett v. Persons Unknown*, 53 Me. 228, 231 (1861).  To accomplish this, Harvey is required to demonstrate (1) that her possession of the disputed property was under color of title, and (2) that the use of at least a portion of the property by Harvey and her predecessors was sufficient to establish title by adverse possession.

1.    Color of Title

[¶8]   Harvey's deed appears to describe a rectangular parcel, the eastern boundary of which runs along the boundary of the Milner Farm.[5] However, the shape of the Milner Farm boundary as described in the Furrow deeds and the Harris survey conflicts with that description, creating a latent ambiguity in Harvey's deed. *Milligan v. Milligan*, 624 A.2d 474, 477 (Me. 1993) ("A latent ambiguity in a deed is created when, in applying the description to the ground, facts extrinsic to the document controvert or in some way render unclear the deed's apparently unambiguous terms." (quotation marks omitted)).

[¶9]   "When the language of a deed is susceptible of more than one meaning, the trial court must determine the grantors' intent from contemporaneous circumstances and from standard rules of construction." *Id.* The grantor's intent is relevant even when applying the standard rules of construction, which provide that "boundaries are controlled by, in descending priority, monuments, courses, distances, and quantity *unless* this produces a result that is absurd or manifestly inconsistent with the parties' intentions." *Id.* at 478 (emphasis added); *see also*

_____

[5] Furrow argues that the parties stipulated to the location of the boundary between the two properties, and that any construction of Harvey's deed must necessarily conform with the elbow-shaped boundary described in the stipulation. The stipulation provides, "The area depicted on the Harris survey as [the Furrow property] defines the boundaries of what was formerly the Milner Farm *as described in the deed* . . . ." (emphasis added.) The parties confirmed at oral argument that the stipulation referred only to the shape of the property described in Furrow's deed; they disagreed only about the legal effect of that description. Harvey did not stipulate that the boundary described in Furrow's deed controlled the boundary as described in her own deed.

8

*Lloyd v. Benson*, 2006 ME 129, ¶ 13, 910 A.2d 1048 ("The rules of construction should be applied beginning with the overarching goal of giving effect to the intent of the parties."). We have previously stated, "The cardinal rule for the interpretation of deeds and other written instruments is the expressed intention of the parties, gathered from all parts of the instrument, giving each word its due force, *and read in the light of existing conditions and circumstances.*" *Sleeper v. Loring*, 2013 ME 112, ¶ 16, 83 A.3d 769 (emphasis added) (quoting *Perry v. Buswell*, 113 Me. 399, 401, 94 A. 483 (1915)).

[¶10] In light of this precedent, the trial court did not err in concluding that, although Harvey's predecessor-in-title "may not have owned what he was conveying, it is nevertheless clear . . . that he attempted to convey a parcel having a rectangular shape" and that "it was the intention of the grantors and grantees in the Harvey chain of title that the parcel being conveyed had a rectangular shape, consistent with the plaintiff's claims, but contrary to the stipulated shape of the western Milner line." Although Furrow's deed was superior to Harvey's deed, Harvey's deed described a rectangular parcel. Thus, Harvey's possession of the disputed property was under color of title, satisfying the first requirement of adverse possession by constructive possession.

2.      Use Sufficient to Establish Adverse Possession

[¶11]   To succeed in a claim of adverse possession, a claimant must demonstrate that his or her use of the property was (1) actual, (2) open, (3) visible, (4) notorious, (5) hostile, (6) under a claim of right, (7) continuous, and (8) exclusive for over twenty years.  *Weeks v. Krysa*, 2008 ME 120, ¶ 12, 955 A.2d 234.  The claimant has the burden of proving each of these elements by a preponderance of the evidence, *id.*, and "[w]e will uphold a determination [that a claimant established each element] of adverse possession if supported by credible evidence in the record."  *Hennessy v. Fairley,* 2002 ME 76, ¶ 25, 796 A.2d 41 (quotation marks omitted); *Striefel v. Charles-Keyt-Leaman P'ship*, 1999 ME 111, ¶ 7, 733 A.2d 984.

[¶12]   "Actual possession" means "physical occupancy or control over property."  *Black's Law Dictionary* 1282 (9th ed. 2009).  "Actual possession and use exists when the land is in the immediate occupancy and physical control of the adverse possession claimant," *Striefel*, 1999 ME 111, ¶ 9, 733 A.2d 984 (quotation marks omitted), and is "established when the evidence shows an actual use and enjoyment of the property that is in kind and degree the same as the use and enjoyment to be expected of the average owner of such property."  *Emerson v. Me. Rural Missions Ass'n, Inc.*, 560 A.2d 1, 2 (Me. 1989), *overruled on other grounds by Dombkowski v. Ferland*, 2006 ME 24, 893 A.2d 599.  Here, the trial

10

court found that part of Harvey's garage is on the disputed triangle, that Jack Jensen established and maintained a lawn, garden, and fruit trees, and that he maintained a road to the lake over the disputed property, which he and his family traversed on a regular basis. These activities constitute actual physical occupancy.

[¶13] The trial court's findings that the use was open, visible, and notorious are similarly supported by the record. "Open means without attempted concealment. Visible means capable of being seen by persons who may view the premises. Notorious means known to some who might reasonably be expected to communicate their knowledge to an owner maintaining a reasonable degree of supervision over his property." *Striefel*, 1999 ME 111, ¶ 11, 733 A.2d 984 (footnotes omitted) (citations omitted) (quotation marks omitted). The trial court concluded that, particularly in the northern portion of the property, the Jensens' concentrated use of the property was readily apparent. Although they are not dispositive, tax maps depicting Harvey's property as a rectangular lot serve as additional evidence supporting the finding of notorious use. *See Holden v. Page*, 118 Me. 242, 246, 107 A. 492 (1919) ("[P]ayment of a tax upon land is evidence of a claim of title. If such payment is known to and acquiesced in by the owner, it becomes more significant." (citations omitted)).

[¶14] Regarding the element of hostility, "[h]ostile simply means that the possessor does not have the true owner's permission to be on the land." *Striefel*,

1999 ME 111, ¶ 13, 733 A.2d 984 (quotation marks omitted). Here, the trial court's finding that the possession by Harvey and her predecessors was hostile until 2006 is supported by ample record evidence, including a letter from Furrow to Harvey indicating that the boundary line had been mutually misapprehended, as well as testimony that Jack Jensen never received permission from the Furrows to use the disputed property.

[¶15] "Under a claim of right means that the claimant is in possession as owner, with intent to claim the land as its own, and not in recognition of or subordination to the record title owner." *Id.* ¶ 14 (alterations omitted) (quotation marks omitted). Again, there is no legitimate dispute that Harvey and her predecessors used the land as if they owned it and that their use was not undertaken in subordination to Furrow's claim; on the contrary, Harvey and her predecessors occupied the land as if they owned it because they believed they did in fact own it. *See Dombkowski*, 2006 ME 24, ¶ 24, 893 A.2d 599 (overruling earlier cases to the extent that they "adopted the position that intention to hold only to the true boundary wherever that boundary might be defeats a claim of one seeking title by adverse possession to land beyond the true boundary" (alterations omitted) (quotation marks omitted)).

[¶16] "Continuous means occurring without interruption," and, "[l]ike *actual* possession and use, *continuous* possession and use requires only the kind

and degree of occupancy (*i.e.*, use and enjoyment) that an average owner would make of the property." *Striefel*, 1999 ME 111, ¶ 16, 733 A.2d 984 (quotation marks omitted). "Exclusive possession and use means that the possessor is not sharing the disputed property with the true owner or public at large." *Id.* ¶ 17 (quotation marks omitted). Evidence in the record supports the court's finding that the use by Harvey and her predecessors was continuous and exclusive until 2006. Evidence that Furrow's use of his own property extended only to the edge of the disputed area is relevant, contrary to Furrow's assertions, because it supports the trial court's finding that the use of the disputed area by Harvey and her predecessors was exclusive.

[¶17] Finally, "[a] claimant must prove that its possession and use satisfied each of the aforementioned elements simultaneously for a period of at least twenty years." *Id.* ¶ 18 (quotation marks omitted). The trial court's findings refer to use of the property by Harvey's predecessors beginning as early as 1950. There is no question that the trial court's finding of use by Harvey and her predecessors for well over forty years is supported by competent record evidence and is not clearly erroneous.

[¶18] In addition to arguing that the trial court's factual findings were clearly erroneous, Furrow and Lane argue that the court's findings were insufficient as a matter of law to establish adverse possession. In support of this

argument, they cite several cases in which we have concluded that certain uses were insufficient on their own to establish title by adverse possession. *See, e.g., Weinstein v. Hurlbert*, 2012 ME 84, ¶ 12, 45 A.3d 743 (seasonal grass mowing and other "isolated events" insufficient to establish notorious and hostile use); *Weeks*, 2008 ME 120, ¶ 19, 955 A.2d 234 (evidence that claimants may have cut trees and cleared brush on disputed lot after storms and on a few other occasions, "without more, does not demonstrate hostility or intent to displace the true owner"); *Dowley v. Morency*, 1999 ME 137, ¶ 20, 737 A.2d 1061 (affirming trial court's denial of claim of title to disputed area where claimants' only uses were mowing grass and using driveway).

[¶19]  Although certain of the activities Harvey and her predecessors engaged in on the disputed area would, on their own, be insufficient to establish adverse possession, we have never said that such activities must be disregarded in determining whether the elements of adverse possession have been satisfied. On the contrary, we have frequently considered such activities in the aggregate, i.e., in the context of a claimant's overall use of the property. *See, e.g., Gay v. Dube*, 2012 ME 30, ¶¶ 14-15, 39 A.3d 52 (concluding that the record contained sufficient evidence to support a finding of ownership by adverse possession where claimants "paid taxes on the [disputed property]; posted no trespassing signs; used it for cutting wood, training show cattle, and collecting sap; and [gave] permission for

others to cut wood, trim brush, and collect sap there"); *Stowell v. Swift*, 576 A.2d 204, 205-06 (Me. 1990) (evidence that claimants "used the property for cutting firewood, selling gravel, family picnics, hunting and other activities," that they conveyed portions of the property, and that the claimants and their predecessors-in-interest had paid taxes on the property was sufficient to support a finding of ownership by adverse possession).

[¶20] Here, the court found that Harvey or her predecessors had erected a stone wall and barbed wire fencing, built and maintained a garage, established and maintained a garden and a lawn, planted and maintained fruit trees, maintained a road, and marked the asserted boundary with blazes, all on the disputed property. In addition, the court found that Harvey and her predecessors paid taxes on property that was depicted in the Town tax maps as a rectangular lot consistent with the size and shape of the land to which Harvey seeks title by adverse possession. The court also made findings that Harvey and her predecessors frequently walked the property, cleaned up the fields, hunted, traveled to the lake, cut wood, mowed, and gardened, all beginning as early as 1950. In short, the trial court made the finding, supported by competent record evidence, that the use of the property by Harvey and her predecessors was "comprehensive and complete." On this record, the trial court committed no error by concluding that each of the

elements of adverse possession has been satisfied by a preponderance of the evidence.

B.     Boundary by Acquiescence

[¶21]  Because we affirm the trial court's correct application of the doctrine of constructive possession, we do not address Harvey's claim of boundary by acquiescence.  Nor do we address whether the Blakes have established a boundary by acquiescence against Furrow and Lane because, although the Superior Court discussed this issue in its decision, it did not enter a final judgment in favor of the Blakes, who were parties in interest only and never asserted a claim of boundary by acquiescence.

C.     Harvey's Statutory Trespass Claim

[¶22]  Harvey contends on cross-appeal that the trial court misinterpreted the trespass statute, 14 M.R.S. § 7551-B, as requiring a showing of a knowing or intentional state of mind.  Section 7551-B provides that "a person who intentionally enters the land of another without permission and causes damage to property is liable to the owner" for the owner's actual damages if the property damage was not intentional, but is liable for twice the owner's actual damages if the property was damaged intentionally.  14 M.R.S. §§ 7551-B(1), (2).  The trial court found that Furrow had no liability pursuant to this section because he did not

16

intentionally enter the land of another, reasoning that Furrow subjectively believed that he was on property that he owned.

[¶23]  The trial court did conclude, however, that Furrow was liable to Harvey for damages pursuant to section 7552.  As a result, any recovery pursuant to section 7551-B is barred.  14 M.R.S. § 7552(8).  Thus, we need not reach Harvey's argument relating to the court's construction of section 7551-B. *See Estate of White*, 521 A.2d 1180, 1182 (Me. 1987) (explaining that we will affirm a trial court's decision if it ultimately reaches the correct result).

[¶24]  With respect to section 7552, it is well established that in order to obtain treble damages a party must prove that the trespasser was subjectively aware that his conduct was contrary to the true owner's rights in the property or, in the alternative, that the conduct displayed something more than indifference to the owner's rights.  *See, e.g., Dupuis v. Soucy*, 2011 ME 2, ¶ 22, 11 A.3d 318; *Shrader-Miller v. Miller*, 2004 ME 117, ¶ 18, 855 A.2d 1139.  We are unpersuaded by Harvey's contention that the trial court's finding that treble damages were inappropriate represented a misapplication of the law.  The trial court found that Furrow's conduct in entering Harvey's land and damaging and removing trees was "rash, ill-advised, and offensive to his neighbors"; it also found, however, that Furrow was convinced that he owned the property in question by virtue of the description in his deed and simply did not consider the ramifications of Harvey's

conflicting deed description or the application of the doctrines of adverse possession or boundary by acquiescence. Although we agree that Furrow's conduct, undertaken in the midst of an ongoing boundary dispute, may have demonstrated "an utter and complete indifference to and disregard for" Harvey's rights, more is required to satisfy section 7552(4)(B).[6] *Woodworth v. Gaddis*, 2012 ME 138, ¶ 13, 58 A.3d 1109 (quotation marks omitted). Contrary to Harvey's contentions, the record does not compel a finding that Furrow's conduct rose to the level of being knowing or intentional. *See In re Adoption of T.D.*, 2014 ME 36, ¶ 12, 87 A.3d 726 ("If the trial court finds that a party with the burden of proof fails to meet that burden, we review the entire record to ascertain whether the record compels a finding contrary to that made by the trial court." (quotation marks omitted)).

D.     Harvey's Claim for Slander of Title

[¶25] Finally, Harvey contends that the trial court erred by concluding that she had failed to establish each of the elements necessary to establish Furrow's liability for slander of title. As we have previously explained,

---

[6] Case law applying an earlier version of the statute—which provided for treble damages when conduct was committed "willfully or knowingly" as opposed to "intentionally or knowingly"—required only a showing of "utter and complete indifference to and disregard for the rights of others." *Dupuis v. Soucy*, 2011 ME 2, ¶ 22, 11 A.3d 318 (quotation marks omitted). Because "intentionally" requires a greater level of culpability than "willfully," however, we have construed the current version of section 7552 as requiring something "*more than* an utter and complete indifference to and disregard for" the owner's rights as a prerequisite to an award of treble damages. *Id.* (emphasis added).

> [t]o prove slander of title a claimant must prove (1) there was a publication of a slanderous statement disparaging claimant's title; (2) the statement was false; (3) the statement was made with malice or made with reckless disregard of its falsity; and (4) the statement caused actual or special damages.

*Colquhoun v. Webber*, 684 A.2d 405, 409 (Me. 1996). We will uphold a trial court's findings that the elements have not been met if those findings are supported by the record. *See Rose v. Parsons*, 2013 ME 77, ¶ 13, 76 A.3d 343.

[¶26] Harvey asserts that the court misapplied the law by concluding that Harvey could not prevail on her claim because she derived her title by adverse possession. "[T]itle by adverse possession is a sufficient interest in property for a claimant to maintain an action for slander of title." *Colquhoun*, 684 A.2d at 410. Our review of the trial court's decision persuades us, however, that this was not the basis for the court's decision. Rather, the court concluded that Harvey failed to prove each of the elements of slander of title, reasoning that Furrow's actions did not rise to the level of statements made with malice or reckless disregard because Furrow actually believed he owned the property described in his deed. *See Lester v. Powers*, 596 A.2d 65, 71 (Me. 1991) ("Knowledge or disregard of falsity is a purely subjective state of mind."). Contrary to Harvey's assertion, the trial court's finding that Furrow behaved "aggressively and prematurely" does not compel a finding that he acted with malice or reckless disregard. *See Morgan v. Kooistra*, 2008 ME 26, ¶ 34, 941 A.2d 447 ("A reckless disregard for the truth

exists only if the speaker had a high degree of awareness of the probable falsity or serious doubt as to the truth of the statement. Inadequate investigation into the truth of the statement is not enough to establish malice." (citations omitted) (quotation marks omitted)). Because the court's finding on this point is not clearly erroneous, *see Ballard v. Wagner*, 2005 ME 86, ¶ 16, 877 A.2d 1083, we need not address the remaining elements of Harvey's claim for slander of title.

The entry is:

Judgment affirmed.

---

ALEXANDER, J., concurring.

[¶27]  I concur in and join the Court's opinion.  I write separately because I do not want the Court's opinion, reinvigorating the ancient doctrine [7] of constructive adverse possession or constructive possession, to be read to invite mischievous claims asserting ambiguity in deed descriptions to try to gain title by adverse possession to large amounts of land, based on proof of adverse use of a small portion of that land.

---

[7]  The precedents that the Court cites supporting the constructive adverse possession doctrine date from 1923, 1906, and 1861.  The Court also cites a 1939 treatise that apparently has not been updated.

[¶28] The Court's opinion notes correctly that "[t]ypically, an acquisition of title to property through adverse possession is limited to the area of property that has been actually occupied." Court's Opinion ¶ 7 (citing *Irving Pulp & Paper Ltd. v. Kelly*, 654 A.2d 416, 419 (Me. 1995)). That is the generally accepted principle in adverse possession cases; you can take title to what you have occupied adversely—and no more—if you prove that your occupancy for that time has been "visible and notorious" and "under a claim of right." To prevail on a claim of adverse possession a claimant must prove, by a preponderance of the evidence, that his or her use of the property was (1) actual, (2) open, (3) visible, (4) notorious, (5) hostile, (6) under a claim of right, (7) continuous, and (8) exclusive for over twenty years. *Weeks v. Krysa*, 2008 ME 120, ¶¶ 12, 21, 955 A.2d 234 (holding that evidence of occasional, seasonal use of an undeveloped lot was insufficient to support an adverse possession claim).

[¶29] Relying on the doctrine of constructive adverse possession, however, the Court holds that a person can obtain equitable title to an entire parcel if the parcel is described in the person's deed and the person has occupied "a portion of that parcel in a manner sufficient to establish title by adverse possession." Court's Opinion ¶ 7 (citing *Campbell v. Whitehouse*, 122 Me. 409, 417, 120 A. 529 (1923); *Banton v. Herrick*, 101 Me. 134, 138-39, 63 A. 671 (1906); *Brackett v. Persons Unknown*, 53 Me. 228, 231 (1861); 4 Herbert T. Tiffany & Basil Jones, *The Law of*

*Real Property* § 1155 at 815 (3d ed. 1939) (stating that "one having 'color of title,'

that is, claiming under what purports to be a valid muniment of title, although he

actually occupies a part only of the tract covered by his muniment of title, is to be

regarded as in possession of the whole tract")).

[¶30]  This statement of the law of constructive adverse possession raises the

possibility that a person could allege an ambiguity in a deed to encompass a much

larger area than may have been conveyed,[8] demonstrate use of a small portion of

that property sufficient to support an adverse possession claim, and win title to the

entire parcel.  Thus, the parameters of the described doctrine of constructive

adverse possession could be read to allow proof of adverse possession to one acre,

plus proof of a deed ambiguity, to allow a litigant to gain title to a fifty or hundred

acre parcel.  However, neither the doctrine of constructive adverse possession nor

the Court's opinion should be read to allow proof of adverse possession to a small

portion of a parcel to gain title to a much larger parcel.

[¶31]  In this case the trial court found, and the record fully supports, the

determination that (i) color of title was established by a specific but incorrect deed

that had long been in existence, (ii) the coverage of the superior deed, controlling

the property description, was stipulated, and, most importantly, (iii) the evidence

---

[8]  Ambiguities are not difficult to suggest when deeds may refer to long departed monuments and roughly estimated angles, and small differences in estimated angles can translate to big differences in the land believed to be included in the boundary description.

22

supporting adverse possession demonstrated adverse occupancy and use of a large portion of the eleven acre lot, such that the "use of the property by Harvey and her predecessors was 'comprehensive and complete.'" Because (i) the adverse use of the property in dispute was "comprehensive and complete," (ii) the boundaries of the property actually conveyed by deed were stipulated, and (iii) the boundaries of the incorrect deed were found to be specific and supported use of the disputed property under color of title for a long period of time, the doctrine of constructive adverse possession was properly applied to convey title to the entire disputed parcel by adverse possession. Absent any one of these factors, application of constructive adverse possession would be difficult to support.

---

**On the briefs:**

> Richard Johnson Jr., Esq., Edwards & Johnson, Lincoln, and Michael J. O'Toole, Esq., Woodman Edmands Danylik Austin Smith & Jacques, P.A., Biddeford, for appellants Addison H. Furrow Jr. and Karen R. Lane

> Paul W. Chaiken, Esq., and Robert W. Laffin, Jr., Rudman Winchell, Bangor, for appellees George Blake and Gloria Blake

> Knud E. Hermansen, Esq., Old Town, and Michael H. Griffin, Esq., Griffin & Jordan, LLC, Orono, for appellee Susan C. Harvey

> Edward C. Russell, Russell & Silver, P.A., Bangor, for appellees David Blake and Faith Blake (adopting brief of George Blake and Gloria Blake)

**At oral argument:**

Michael J. O'Toole, Esq., for appellants Addison H. Furrow Jr. and Karen R. Lane

Robert W. Laffin, Jr., for appellees George Blake and Gloria Blake

Knud E. Hermansen, Esq., for appellee Susan C. Harvey

Penobscot County Superior Court docket number RE-2008-5
FOR CLERK REFERENCE ONLY